## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TROY (aka TREYSHAWN) RANKIN<br>c/o Layhill Center<br>3227 Bel Pre Rd.<br>Silver Spring, MD 20906<br><br>          Plaintiff,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA<br><br>and<br><br>S. ELWOOD YORK, JR., in his Individual Capacity<br>Former Interim Director of the Department of<br>Corrections<br>724 Thomas St.<br>Key West, FL 33040<br><br>DENNIS HARRISON, SR., in his Individual Capacity<br>Former Warden (Retired) of the D.C. Jail<br>10000 Goose Pond Ct.<br>Laurel, MD 20708<br><br>JOHN DOE(S), in his Individual and Official<br>Capacities<br>Supervisors at the D.C. Jail, the identity and number<br>of whom is presently unknown,<br>1901 D Street, SE<br>Washington, DC 20003, *and*<br><br>RICHARD ROE(S), in his Individual and Official<br>Capacities<br>Correctional Officers in the Receiving &<br>Discharge Unit at the D.C. Jail, the identity and<br>number of whom is presently unknown,<br>1901 D Street, SE<br>Washington, DC 20003<br><br>          Defendants. | Civil Action No.<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### (Civil Rights Violations and Negligence)

**INTRODUCTION**

1.      Troy (aka Treyshawn) Rankin, by counsel, brings this civil rights action under 42

U.S.C. § 1983 against the District of Columbia and certain present and former employees of the

Department of Corrections for failing to provide her with medications prescribed by her treating

physician upon her release from the Central Detention Facility, in violation of the Eighth

Amendment to the U.S. Constitution, as applied to the District of Columbia through the Fifth

Amendment. The District of Columbia has a practice and custom of violating prisoners' Eighth

Amendment rights to adequate medical care by failing to provide transitional (or bridge)

medications to individuals who require continuing treatment when they are discharged from

incarceration. This practice, and the deliberate indifference of prison officials to Ms. Rankin's

serious medical needs upon her release, deprived Ms. Rankin of her constitutional rights and

caused serious physical and emotional injury to her. Ms. Rankin also brings claims against

defendants under the Due Process Clause of the Fifth Amendment and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. § 794, for violating her right to be free from discriminatory treatment on the

basis of her disability. Ms. Rankin also asserts a claim against the defendants for negligence. As

a result of defendants' conduct, Ms. Rankin, who is HIV-positive and suffers from AIDS,

sustained emotional and physical injury, including a relapse of toxoplasmosis, and became

comatose and incapable of basic functioning for weeks. Nearly a year after the violation of Ms.

Rankin's constitutional and statutory rights, Ms. Rankin is still recuperating in a nursing facility.

Ms. Rankin seeks monetary damages for the injuries she sustained as a result of defendants'

conduct.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate her pendent claim arising under the laws of the District of Columbia.

3.      Venue is proper under 28 U.S.C. § 1391(b).

### NOTICE OF CLAIM

4.      Plaintiff filed a timely notice of claim against the District of Columbia in accordance with D.C. Code § 12-309.

### PARTIES

5.      Troy (aka Treyshawn) Rankin[1] is an adult resident of the State of Maryland.

6.      Defendant Government of the District of Columbia ("District") is a municipal corporation capable of being sued as provided in D.C. Code § 1-102.  The District by and through its agents is responsible for supervising and operating the District of Columbia Department of Corrections ("DOC"), and ensuring the health and safety of all inmates incarcerated in DOC facilities.  The District is also responsible for and has a duty to establish policies and procedures for the DOC and its contracting agents, and for the training and supervision of DOC staff.  The District has, and at all relevant times to this action had, responsibility for persons incarcerated under its authority.  "District," as used herein, encompasses and is defined to include its agency, the DOC.

---

[1] Ms. Rankin is a 38 year old male-to-female preoperative transsexual.  Ms. Rankin identifies and refers to herself as a female.

7.     Defendant S. Elwood York, Jr. was the Interim Director of the DOC at certain times relevant to this action. Mr. York is sued in his individual capacity.

8.     Defendant Dennis Harrison was the Warden of the D.C. Jail, a DOC facility, at certain times relevant to this action. Mr. Harrison is sued in his individual capacity.

9.     Defendant John Doe(s) was a supervisor at the D.C. Jail at certain times relevant to this action. Defendant Doe(s) is sued in both his official and individual capacities.

10.     Defendant Richard Roe(s) was a correctional officer at the D.C. Jail at certain times relevant to this action. Defendant Roe(s) is sued in both his official and individual capacities.

## FACTUAL ALLEGATIONS

### Background

11.     The DOC is responsible for managing the detention of pre-sentenced and sentenced male and female misdemeanor offenders in the District of Columbia. The DOC manages the Central Detention Facility ("D.C. Jail") and is ultimately responsible for oversight of the Correctional Treatment Facility ("CTF"). The CTF is a private, for-profit prison facility operated by Corrections Corporation of America ("CCA") on a contract basis with the District, and is located next to the D.C. Jail. Inmates at the CTF are under the custody of the DOC. The DOC also maintains a "secure ward" in the Greater Southeast Community Hospital.

12.     On information and belief, approximately 3500 inmates are currently housed in the D.C. Jail and CTF. The conditions in these facilities have given rise to numerous class action law suits on behalf of prisoners over the past 25 years. On information and belief, inadequate medical services at these facilities has been an endemic problem.

13.    The District has a constitutional duty under the Eighth Amendment to provide adequate medical care to inmates in its custody. This duty includes providing outgoing prisoners with transitional or "bridge" medications. An inmate who receives treatment while in custody, and who continues to require medication when he or she is released, must be provided with a temporary or bridge supply of medications sufficient to ensure that medication is available during the period of time reasonably necessary to permit him or her to consult a physician and obtain a new supply.

14.    This duty is reflected in the Standards for Health Care in Correctional Institutions, issued by the American Public Health Association ("APHA") Task Force on Correctional Health Care Standards, which provide that correctional institutions must provide, at a minimum, a two-week supply of bridge medications.

15.    The District has expressly acknowledged the duty to provide such bridge medications. The DOC's Policy Statement on Pharmacy Services provides: "A seven day supply of medications will be provided to all inmates released to home."

16.    The District's policy is reflected in the DOC's contract with the Center for Correctional Health and Policy Studies, Inc. ("CCHPS"), the entity that provided medical services to inmates in DOC custody during the time relevant to this action (the "DOC/CCHPS Contract"). The DOC/CCHPS Contract provided that "all inmates released to the community shall receive a seven (7) day supply of medications upon transfer." The District and the individual defendants violated their non-delegable constitutional duty to provide bridge medications by failing to supply Ms. Rankin, who suffers from AIDS, with the medications that

her treating physician prescribed for her before her release and which should have been given to her when she was discharged.

17.    The District government has acknowledged that it has a constitutional duty to ensure that all inmates receive adequate medical care.

18.    On June 29, 2005, the D.C. Council's Committee on Health and the Committee on the Judiciary held a Joint Oversight Hearing on Health Care Within the District of Columbia's Correctional Facilities ("Joint Oversight Hearing").  Laura Hankins, Special Counsel to the Director of the Public Defender Service ("PDS"), testified that in preparation for the hearing, she spoke with many PDS attorneys and social workers about their experiences with clients and medical care at the D.C. Jail and CTF.  She concluded: "the most frequently mentioned problem involved medication distribution.  PDS clients, who are representative of the jail and CTF population, experience long waits for medication, have been given the wrong medication or have been given the wrong dosage of the right medication."

19.    The D.C. Deputy Mayor for Public Safety & Justice, Edward Reiskin, in a written response to a question from Councilmember David Catania (in preparation for the Joint Oversight Hearing) about continuity of care for those individuals who received medications while incarcerated and continue to need medications upon release, stated: "A seven (7) day supply of medications is given by DOC upon release to the community, Halfway House or to the Federal Bureau of Prisons."

20.    Despite the clear DOC Policy Statement and administration testimony regarding the District's duty to provide bridge medications, the failure to provide such medications to

outgoing prisoners upon release is a longstanding practice and custom of the District that is deliberately indifferent to, and recklessly disregards, the serious medical needs of prisoners.

21.     Defendants were required to ensure that Ms. Rankin left DOC custody with her supply of prescribed bridge medications. They failed to do so. Ms. Rankin was released from the Receiving and Discharge Unit ("R&D Unit") on December 2, 2005 sometime around 10:00 p.m., into the cold, already suffering with pneumonia, without her necessary medications.

### Ms. Rankin's Difficulties Accessing Necessary Medications While Incarcerated

22.     When Ms. Rankin entered the D.C. Jail on June 26, 2005, where she was to serve a six-month term, she was HIV-positive and suffered from symptoms of toxoplasmosis — a brain infection that is well known to pose particular risks to persons who are HIV-positive. Ms. Rankin received no effective medication for severe headaches and a fever — well-known symptoms of toxoplasmosis — during her first several days of incarceration. Several days later she was taken to Greater Southeast Community Hospital, where she was diagnosed with and treated for toxoplasmosis. Defendants knew, or reasonably should have known, about Ms. Rankin's medical condition and her need for medication.

23.     Ms. Rankin was transferred to CTF when her symptoms improved. Subsequently, and at various times while she was incarcerated at CTF, she failed to receive her medications. Ms. Rankin was often forced to obtain the assistance of friends and community advocates to ensure that her medications were available and administered on a timely basis. During her five and one-half months of incarceration, Ms. Rankin was hospitalized at least twice, and never had a reliable supply of medications.

### Ms. Rankin's Discharge from R&D Without Necessary Medications

24. Inmates at CTF are routinely transferred to the R&D Unit at the D.C. Jail to be processed for release. R&D is staffed by the DOC.

25. Ms. Rankin was scheduled to be discharged on December 2, 2005. Ms. Rankin's treating doctor had written her a prescription for transition medications for, at a minimum, HIV and toxoplasmosis. Prior to her release, Ms. Rankin asked a correctional officer at CTF for her medications, but was told that she would receive them when she was released from the R&D Unit at the D.C. Jail.

26. On Friday, December 2, 2005, while she waited in the R&D Unit for over 12 hours, Ms. Rankin requested her medications at least twice from defendant Richard Roe(s), but was told that no one knew anything about giving her medications. In a fragile condition, Ms. Rankin was released from the D.C. Jail into the cold at approximately 10 p.m., dressed in just a prison jumpsuit, suffering from pneumonia, and without her medications.

**Ms. Rankin's Relapse of Toxoplasmosis**

27. After repeated attempts by Ms. Rankin to get her medications from D.C. General Hospital ("D.C. General"), she eventually obtained the necessary prescriptions, and got her medications on or about January 10, 2006.

28. Shortly thereafter Ms. Rankin became very ill. On January 16, 2006, Ms. Rankin was taken to George Washington Hospital and admitted into the Intensive Care Unit, where she was diagnosed with a relapse of toxoplasmosis. Ms. Rankin ultimately became comatose and required intubation for approximately a week.

8

29.    Ms. Rankin was discharged from George Washington Hospital on February 5, 2006. Ms. Rankin was then admitted to the Layhill Center — a nursing home — for rehabilitation and care, where she is currently still undergoing treatment.

30.    Ms. Rankin's relapse of toxoplasmosis directly resulted from the defendants' failure to provide Ms. Rankin with the necessary prescribed medications upon her release from incarceration.

31.    Ms. Rankin has suffered permanent physical damage due to the severity of her relapse, with a high likelihood of fatality from the condition. Further, as a result of the incidents complained of, Ms. Rankin has suffered severe emotional distress and injury.

32.    The deliberate indifference of defendants to the serious medical needs of outgoing prisoners described above continues today as a *de facto* policy and practice. District officials have taken constitutionally insufficient measures to remedy these conditions.

### FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 (*Monell* Claim—Deliberate indifference to serious medical needs) — Violation of Eighth Amendment

### (Against Defendant District of Columbia and Defendants Doe(s) and Roe(s) in Their Official Capacities)

33.    Plaintiff hereby incorporates paragraphs 1 through 32, *supra*, as set forth herein.

34.    At all relevant times, defendants managed, operated, or maintained contract oversight of the D.C. Jail and CTF under color of state law. Having incarcerated Ms. Rankin, defendants deprived her of all means of securing medical care on her own behalf, and thus were constitutionally required to provide her with adequate medical care, which includes the provision of necessary medications both during her incarceration and upon her release. Because outgoing

prisoners do not have immediate access to a doctor upon release to obtain a new supply of medicine, the period of time during which prisoners who have received and continue to require medication are unable to secure medical care and medication on their own behalf extends beyond the period of actual incarceration. Consequently, the constitutional requirement to provide adequate medical care includes the duty to provide outgoing prisoners with a temporary supply of medication sufficient to ensure that they have the necessary medications during the period of time reasonably necessary to permit them to schedule a doctor's appointment and obtain a new supply.

35.     Defendants knew, or reasonably should have known, that Ms. Rankin had serious, life-threatening medical needs and that she faced a substantial risk of serious harm if she was not provided with the medications prescribed by her treating physician at CTF. Defendants acted with deliberate indifference to, and reckless disregard for, Ms. Rankin's serious medical needs when they failed to provide her with her necessary medications upon release, despite her repeated requests. As a result of defendants' conduct, Ms. Rankin suffered a relapse of toxoplasmosis so severe that she became comatose and incapable of basic functioning for weeks. She is still recovering from the injuries sustained as a result of the toxoplasmosis and the ensuing symptoms.

36.     The failure to provide outgoing prisoners with necessary medications is a pattern, practice, or custom of the District, notwithstanding the official policy to provide a 7-day supply of medications to outgoing prisoners. In adopting this custom or practice, the District and DOC acted with deliberate indifference to, and reckless disregard for, the serious medical needs of outgoing prisoners generally, and Ms. Rankin specifically.

37.     To date, defendants have failed to remedy these unconstitutional conditions.

38.     Defendants' continued failure to address these conditions was and is the result of a conscious and deliberate decision or reckless disregard.

39.     Defendants' pattern, practice, custom, or policy of deliberate indifference to, or reckless disregard for, the substantial risk of harm facing released inmates who are denied necessary bridge medications directly and proximately caused Ms. Rankin's injuries, thus depriving her of her Eighth Amendment right to be free from cruel and unusual punishment, in violation of 42 U.S.C. § 1983.  As a result of the acts complained of herein, Ms. Rankin experienced physical pain and injury, as well as mental anguish.  Moreover, Ms. Rankin has suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 (*Monell* Claim —Failure to Train/Supervise) — Violation of Eighth Amendment

### (Against Defendants District of Columbia and Defendants York and Harrison in their Individual Capacities and Doe(s) in their Individual and Official Capacities)

40.     Plaintiff hereby incorporates paragraphs 1 through 39, *supra*, as set forth herein.

41.     The correctional officers in the R&D Unit are responsible for providing inmates continuing to require prescribed medication with a 7-day supply of medication upon release. As described above, the failure to provide necessary medications upon discharge from the R&D Unit of the D.C. Jail is an established practice.  This practice is in direct contravention of the District's Policy for Pharmacy Services, which provides that "[a] seven day supply of medications will be provided to all inmates released to home."  This failure, among others,

demonstrates that the correctional officers in the R&D unit were, and continue to be, inadequately trained and supervised.

42.     As a result of the inadequate training and supervision of the R&D Unit correctional officers, defendants failed to provide Ms. Rankin with her necessary prescription medications in violation of her Eighth Amendment rights to be free from cruel and unusual punishment.  The failure to train and supervise the correctional officers staffing the R&D Unit to ensure that prisoners' constitutional rights are protected constitutes a policy or custom of deliberate indifference on the part of the District.

43.     At all relevant times, defendants were aware of an ongoing deficiency in the District's training program for R&D correctional officers, and in the supervision of those officers on the job.  Despite their awareness of this continuing problem, defendants failed to improve the quality of the training programs, or to require greater supervision of the correctional officers in the R&D Unit.

44.     The need for more or different training and more supervision of the R&D Unit correctional officers was so obvious, and the inadequacy so likely to result in the violation of the constitutional rights of prisoners, that the District, the DOC, and correctional officials acted with deliberate indifference in failing to remedy the need.

45.     Defendants adopted a pattern, practice, custom or policy of deliberate indifference to, and reckless disregard for, the adequate training and supervision of the R&D Unit correctional officers.

46.     To date, defendants have failed to address adequately these unconstitutional conditions.

47.    Defendants' continued failure to address the lack of adequate training and supervision was and is the result of a conscious and deliberate decision or reckless disregard. Defendants' pattern, practice, custom, or policy of deliberate indifference to, or reckless disregard for, the need for adequate training and supervision of R&D Unit correctional officers directly and proximately caused Ms. Rankin's injuries, thus depriving her of her constitutional rights under the Eighth Amendment, in violation of 42 U.S.C. § 1983. As a result of the acts complained of herein, Ms. Rankin experienced physical pain and injury, as well as mental anguish. Moreover, Ms. Rankin has suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 — Violation of Eighth Amendment

**(Against Defendants York and Harrison in their Individual Capacities and Defendants Doe(s) and Roe(s) in their Individual and Official Capacities)**

48.    Plaintiff hereby incorporates paragraphs 1 through 47, *supra*, as set forth herein.

49.    At all relevant times, Defendants York, Harrison, Roe(s) and Doe(s) managed and operated the D.C. Jail and CTF under color of state law. Having incarcerated Ms. Rankin, defendants deprived her of all means of securing medical care on her own behalf, and thus were constitutionally required to provide her with adequate medical care, which includes the provision of necessary medications. Because outgoing prisoners do not have immediate access to a doctor upon release to obtain a new supply of medicine, the period of time during which prisoners who have received and continue to require medication are unable to secure medical care and medication on their own behalf extends beyond the period of actual incarceration. Consequently, the constitutional requirement to provide adequate medical care includes the duty to provide

13

outgoing prisoners with a temporary supply of needed medication sufficient to ensure that they have medication during the period of time reasonably necessary to permit them to schedule a doctor's appointment and obtain a new supply.

50.     Defendants knew that Ms. Rankin was very sick and had serious medical needs and that she faced a substantial risk of serious harm if she was not provided with the medications prescribed by her treating physician. Defendants acted with reckless disregard towards Ms. Rankin's serious medical needs when they ignored the instructions of her treating physician and failed to provide her with her necessary medications upon release, despite her repeated requests.

51.     As a result of defendants' conduct, Ms. Rankin suffered a relapse of toxoplasmosis so severe that she became comatose and incapable of basic functioning for weeks. To this day, Ms. Rankin is still attempting to recover from the injuries sustained as a result of the toxoplasmosis and the ensuing symptoms caused by defendants' wrongful actions.

52.     Defendants' deliberate indifference to, or reckless disregard for, the substantial risk of serious harm that faced Ms. Rankin when they discharged her without her required medications directly and proximately caused Ms. Rankin's injuries, thus depriving her of her Eighth Amendment right to be free from cruel and unusual punishment, in violation of 42 U.S.C. § 1983. As a result of the acts complained of herein, Ms. Rankin experienced physical pain and injury, as well as mental anguish. Moreover, Ms. Rankin has suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 —Violation of the Due Process Clause of the Fifth Amendment

### (Against Defendant District of Columbia and Defendants York and Harrison in their Individual Capacities and Defendants Doe(s) and Roe(s) in their Individual and Official Capacities)

53.    Plaintiff hereby incorporates paragraphs 1 through 52, *supra*, as set forth herein.

54.    The District and the individual defendants subjected Ms. Rankin to discriminatory treatment on the basis of her physical illness and HIV-positive status by denying her proper health care, including the medications needed to ensure her health.

55.    On information and belief, similarly situated individuals without HIV have been treated in a substantially different and more favorable manner.

56.    These actions violated Ms. Rankin's constitutional rights to be free from discrimination and to be treated with equal protection under law, and were the proximate and direct cause of her near-fatal illness.

## FIFTH CAUSE OF ACTION

### Violations of the Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

### (Against Defendant District of Columbia and Defendants York and Harrison in their Individual Capacities and Defendants Doe(s) and Roe(s) in their Individual and Official Capacities)

57.    Plaintiff incorporates by reference paragraphs 1 through 56, *supra*, as set forth herein.

58.    Ms. Rankin is an individual with a disability in that she was diagnosed with and regarded as suffering from AIDS.

15

59.     Defendant the District, by and through its officials, employees and agents, knew, or should have known, that Ms. Rankin suffered from AIDS.

60.     Defendant the District, by and through its officials, employees and agents, discriminated against Ms. Rankin due to her disability by:

a)     refusing to fill a valid prescription for a medicine needed to counter the effects of AIDS;

b)     denying her proper health care;

c)     denying her medications to counter the effects of HIV;

d)     releasing her into an environment in which she would have little ability to obtain the medications needed to counter the effects of HIV; and

e)     failing to train its officers in the appropriate and reasonable practices under the circumstances and/or failing to follow such training in this instance.

61.     As a proximate result of these violations of the ADA and the Rehabilitation Act of 1973, Ms. Rankin's right to be free from discrimination on the basis of her disability was denied. As a direct result of these wrongful actions, Ms. Rankin experienced physical pain and injury, as well as mental anguish. Moreover, Ms. Rankin has suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

SIXTH CAUSE OF ACTION

Negligence

(Against Defendant District of Columbia and Defendants York and Harrison in their Individual Capacities and Defendants Doe(s) and Roe(s) in their Individual and Official Capacities)

62.     Plaintiff hereby incorporates paragraphs 1 through 61, *supra*, as set forth herein.

63.     Defendant the District and its officials, employees, and agents have a statutory and common law duty to provide for the safekeeping, care, protection, instruction, and discipline of all persons committed to its penal institutions, including Ms. Rankin. D.C. Code § 24-211.02.

64.     Defendants breached the duty of reasonable care they owed Ms. Rankin under D.C. Code § 24-211.02 by failing to provide her with medications upon release that had been prescribed for her by the doctor who treated her while she was at CTF. Ms. Rankin was told that she would receive the necessary medications upon release. She made repeated requests for the medicines in vain. Defendants' failure to provide Ms. Rankin with her prescription medications at the time of release violated the standard of reasonable care owed by the defendants to Ms. Rankin.

65.     By failing to provide the necessary medications prescribed for Ms. Rankin the defendants breached the duty they owed her, and it was reasonably foreseeable that she would suffer harm as a result.

66.     As a direct and proximate result of the above-described negligence, Ms. Rankin suffered a relapse of toxoplasmosis rendering her comatose and causing other injuries from which she is still recovering. Ms. Rankin experienced physical pain and mental anguish, and suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

SEVENTH CAUSE OF ACTION

Negligent Supervision

(Against Defendant District of Columbia and Defendants York and Harrison in Their
Individual Capacities, and Defendant Doe(s)) in their Individual and Official Capacities)

67.     Plaintiff hereby incorporates paragraphs 1 through 66, *supra*, as set forth herein.

68.     Defendant the District and its officials, employees, and agents have a statutory

and common law duty to provide for the safekeeping, care, protection, instruction, and discipline

of all persons committed to its penal institutions. D.C. Code § 24-211.02. This duty includes the

DOC's duty to use reasonable care in supervising and controlling its employees.

69.     At all relevant times, the District failed to adequately supervise the correctional

officers who staffed R&D to ensure that they carried out the District's duty to provide adequate

care for its prisoners, including ensuring that inmates upon their release received necessary

medications that had been prescribed for them.  Problems in the R&D Unit, including inadequate

supervision, are well known to defendants.  It was and is a common practice to release outgoing

prisoners without providing them with prescribed medications.  As a result of the defendants'

inadequate supervision of the R&D correctional officers, they failed to provide for Ms. Rankin's

care and protection when they discharged her without supplying her with her necessary

medications.

70.     Defendants knew or should have known that, as a result of the lack of supervision

of the R&D correctional officers, outgoing prisoners, including Ms. Rankin, would not receive

necessary medications upon release, and that it was reasonably foreseeable that they would suffer

harm as a result.

71.    As a direct and proximate result of the above-described negligence, Ms. Rankin

suffered a relapse of toxoplasmosis, rendering her comatose and causing other injuries, from

which she is still recovering.  Ms. Rankin experienced bodily pain and mental anguish, and

suffered pecuniary loss, including, but not limited to, hospital and medical expenses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.    award plaintiff compensatory and consequential damages in an amount to be

determined;

2.    award plaintiff punitive damages as allowed by applicable law;

3.    award plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988 in connection with this action; and

4.    grant such other relief as this Court deems just and proper.


Respectfully submitted,


Robert N. Eccles (D.C. Bar No. 355479)
Andrea J. Worden (D.C. Bar No. 463085)
Jason A. Abel (D.C. Bar No. 490382)
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Phone:  (202) 383-5300
Fax:  (202) 383-5414


Philip Fornaci (D.C. Bar No. 434824)
Ivy Lange (D.C. Bar No. 488147)
Washington Lawyers' Committee for Civil Rights

11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 319-1000

## JURY DEMAND

Plaintiff, by and through undersigned counsel, demands trial by jury.

Robert N. Eccles (D.C. Bar No. 355479)
Andrea J. Worden (D.C. Bar No. 463085)
Jason A. Abel  (D.C. Bar No. 490382)
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Phone:  (202) 383-5300
Fax:  (202) 383-5414


Philip Fornaci (D.C. Bar No. 434824)
Ivy Lange (D.C. Bar No. 488147)
Washington Lawyers' Committee for Civil Rights
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 319-1000


DATED:   December 1, 2006

L
06-2063
RMC

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**

TROY (aka TREYSHAWN) RANKIN

88888

**DEFENDANTS**

THE DISTRICT OF COLUMBIA; S. ELWOOD YORK, JR., in his Individual Capacity, Former Interim Director of the Department of Corrections; DENNIS HARRISON, SR., in his Individual and Official Capacities, Former Warden (Retired) of the D.C. Jail; JOHN DOE(S), in his Individual and Official Capacities, Supervisors at the D.C. Jail; RICHARD ROE(S), in his Individual and Official Capacities, Correctional Officers in the Receiving & Discharge Unit at the D.C. Jail

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT       11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert N. Eccles (D.C. Bar No. 355479), Andrea J. Worden (D.C. Bar No. 463085), Jason A. Abel (D.C. Bar No. 480382)
O'Melveny & Myers, LLP, 1625 Eye Street, NW, Washington, D.C. 20006-4001
(202) 383-5300

Philip Fornaci (D.C. Bar No. 434824), Ivy Lange (D.C. Bar No. 488147)
Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, N.W., Suite 400, Washington, D.C. 20036
(202) 319-1000

CASE NUMBER   1:06CV02063

JUDGE: Rosemary M. Collyer

DECK TYPE: Civil Rights (non-employm

DATE STAMP: 12/01/2006

JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZ
FOR PLAINT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ **A.** *Antitrust* | ○ **B.** *Personal Injury/ Malpractice* | ○ **C.** *Administrative Agency Review* | ○ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ **E.** *General Civil (Other)* | **OR** | ○ **F.** *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

④

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊚ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊚ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. § 1983; 42 U.S.C. § 12131, et seq.; 29 U.S.C. § 794. Plaintiff seeks relief for denial of medication upon release from the D.C. jail.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** TBD    Check YES only if demanded in complaint    **JURY DEMAND:**   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

**DATE** December 1, 2006    **SIGNATURE OF ATTORNEY OF RECORD**

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.