**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                                    |     |                                      |
|----------------------------------------------------|-----|--------------------------------------|
| TROY (aka TREYSHAWN) RANKIN                        | )   |                                      |
|                                                    | )   |                                      |
|                Plaintiffs,                         | )   |                                      |
|         v.                                         | )   | Civil Action No. 06-02063 (RMC)      |
|                                                    | )   |                                      |
| DISTRICT OF COLUMBIA, *et al*.,                    | )   |                                      |
|                                                    | )   |                                      |
|                Defendants.                         | )   |                                      |

_____)

**DISTRICT DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, OR IN THE
ALTERNATIVE, TO GRANT SUMMARY JUDGMENT IN THEIR FAVOR**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and for the reasons set forth in the accompanying memorandum of points and authorities, District Defendants comprised of the District of Columbia (the "District"), and two (2) District officials sued solely in their individual capacities, S. Elwood York, Jr. ("York") and Dennis Harrison (Harrison"), by and through undersigned counsel, move this Court for an order dismissing all claims against them on the grounds that:

a) The complaint fails to state a claim for which relief may be granted;

b) The plaintiff has not established municipal liability under 42 U.S.C. § 1983;

c) Count One should be dismissed because the plaintiff cannot establish the requisite deliberate indifference to sustain her Eighth Amendment claim;

d) Count Two should be dismissed because the District Defendants cannot be liable under 42 U.S. C. § 1983 for failure to supervise or train;

e) The Plaintiff fails to state a viable Eighth Amendment constitutional violation in Count Three of her complaint;

f)   The Plaintiff's complaint in Count Four fails to allege any violation of the Equal Protection Clause;

g)   Count Five of the complaint should be dismissed because failure to provide bridge medications cannot give rise to an ADA or Section 504 of the Rehabilitation Act of 1973 claim;

h)   District Defendants York and Harrison are entitled to qualified immunity and all claims against them should be dismissed;

i)   The District of Columbia cannot be liable under §42 U.S.C. §1983 on a theory of *respondeat superior* for any individual correctional officer's alleged constitutional violations;

j)   The District Defendants cannot be held liable for the negligent conduct of an independent contractor; and,

k)   All non-constitutional claims alleged in counts six and seven should be dismissed for lack of subject matter jurisdiction.

Proposed alternative Orders and a statement of material facts as to which there is no genuine issue are attached.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Ellen A. Efros
ELLEN A. EFROS
Chief, Equity I

/s/ Denise J. Baker

DENISE J. BAKER
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S079
Washington, D.C. 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February 2007, true copies of the foregoing Motion to Dismiss, Memorandum of Points and Authorities, and proposed Order, were filed electronically with the Court for ECF service upon:

Robert N. Eccles
Andrea J. Worden
Jason A. Abel
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC  20006-4001

Philip Fornaci
Ivy Lange
Washington Lawyers' Committee for Civil Rights
11 Dupont Circle, NW, Ste. 400
Washington, DC  20036

/s/ Denise J. Baker
DENISE J. BAKER

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
TROY (aka TREYSHAWN) RANKIN          )
)
               Plaintiffs,          )
        v.                          )        Civil Action No. 06-02063 (RCM)
)
DISTRICT OF COLUMBIA, *et al.*,      )
)
               Defendants.          )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DISTRICT DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**FOR SUMMARY JUDGMENT IN FAVOR OF DISTRICT DEFENDANTS**

District Defendants, comprised of the District of Columbia (the "District"), and two (2)

District officials sued solely in their individual capacities, S. Elwood York, Jr. ("York") and

Dennis Harrison ("Harrison"),[1] by and through undersigned counsel, and pursuant to Federal

Rules of Civil Procedure 12(b)(6) and 56(c), hereby move to dismiss Plaintiff's Complaint, on

the grounds that:

   a)  The complaint fails to state a claim for which relief may be granted;

   b)  The Plaintiff has not established municipal liability under 42 U.S.C. § 1983;

   c)  Count One should be dismissed because the Plaintiff cannot establish the

       requisite deliberate indifference to sustain her Eighth Amendment claim;

   d)  Count Two should be dismissed because the District Defendants cannot be

       held liable under 42 U.S. C. § 1983 for failure to supervise or train;

   e)  The Plaintiff fails to state a viable Eighth Amendment constitutional violation

       in Count Three of her complaint;

_____

[1] For ease of reference "District Defendants" is used throughout this memorandum even though it is obvious that
certain claims only pertain to the District of Columbia and not the individual defendants.

1

f)   The Plaintiff's complaint in Count Four fails to allege any violation of the Equal Protection Clause;

g)   Count Five of the complaint should be dismissed because failure to provide bridge medications cannot give rise to an ADA or Section 504 of the Rehabilitation Act of 1973 claim;

h)   District Defendants York and Harrison are entitled to qualified immunity and all claims against them should be dismissed;

i)   The District of Columbia cannot be liable under §42 U.S.C. §1983 on a theory of *respondeat superior* for any individual correctional officer's alleged constitutional violations;

j)   The District Defendants cannot be held liable for the negligent conduct of an independent contractor; and,

k)   All non-constitutional claims alleged in counts six and seven should be dismissed for lack of subject matter jurisdiction.

In the alternative, District Defendants move for summary judgment since there are not issues of material fact that would preclude judgment for Defendants as a matter of law.

## I.   INTRODUCTION

### A.   *The Complaint*

Plaintiff, Troy (a/k/a Treyshawn) Rankin (Rankin), asserts a plethora of alleged wrongs committed by the District Defendants arising from her five-month (5) confinement in the District of Columbia's Jail.  The incarceration period at issue in Plaintiff's complaint is a result of two (2) separate offenses of sexual solicitation; however, one sexual solicitation charge resulted in a probation  revocation and extended her second sentence.  (See, Exhibit "A" attached hereto.)

Although Plaintiff was incarcerated on July 27, 2005, it was not until August 4, 2005 that Plaintiff notified the District Defendants that she was HIV-positive. (Medical Records page 54-55). It was not until August 12, 2005 that **Plaintiff admitted that she knew she was HIV-positive since 2003.** (*Id*. page 46).

Note that Plaintiff was sentenced to 30 days in jail on July 7, 2005 in case M6014-05. Thus, she did not inform the District Defendants of her medical status for one (1) full week.

These seven (7) days were not the first time that Plaintiff failed to disclose her medical status to the District Defendants, and thus failed to receive what she alleges is proper medical care. In fact, she served 81 days in jail in an earlier case M28104[2], knowing that she was HIV-positive, knowing that she needed treatment. Nevertheless, Plaintiff now seeks to place the entire burden of her negligence on the District Defendants and raise the standard to constitutional proportion.

The complaint alleges that the District Defendants violated her civil rights by being deliberately indifferent to her medical treatment while she was incarcerated (Count 1); by being deliberately indifferent to the need to train or supervise the correctional staff with regard to the substantial risk of harm facing released inmates who are denied bridge medications (Count 2); by inflicting cruel and unusual punishment on the Plaintiff because the correctional officers responded that "no one knew anything about giving her medications" (Count 3; Complaint ¶ 26); by violating her equal rights to be free from discriminatory treatment based upon her physical illness or HIV-positive status (Count 4); by violating Section 504 of the Rehabilitation Act of

---

[2] Plaintiff was sentenced to 180 days in jail, execution of sentence suspended to all but 80 days, she was in jail for 81 days: 1/4/04, 3/16/05, and 4/14/04 through 7/1/04 and then released on probation. Her probation was revoked on 8/15/05. She was sentenced to 180 days in jail with credit for time served (81 days). For these two sentences, Plaintiff was incarcerated from 7/27/05 through 12/2/05. (See, Exhibit "A".)

1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42, U.S.C. §§ 12131, et seq. (Count 5); and, by being negligent in their care of the Plaintiff (Count 6), and in supervising the correctional staff (Count 7).

> ### B.    Legal Issue

The allegations of Plaintiff's complaint raise the following issue before this Court:  To what extent is the District of Columbia ("the District") legally responsible for the continued medical care of prisoners after they are released from correctional facilities to the community without violating the Eighth Amendment proscription against cruel and unusual punishment or claims of deliberate indifference?

The District contends that its legal responsibility for the prisoner's medical conditions stop at the jailhouse door, as a matter of law; however, the District administers business policies that extends its responsibility contractually.[3]  A contract between the District and a third-party medical care provider states that "all inmates released to the community shall receive a seven (7) day supply of medications upon transfer."  (Complaint ¶ 16).

District Defendants impress upon the Court that this single incident of failure to transmit a message regarding prescription medications alleged in the complaint, involving only actors below policy–making level, i.e., a correctional officer, does not suffice to show municipal policy or custom for purposes of Plaintiff's § 1983 claim.  Moreover, District Defendants request that this Court should acknowledge that responsibility for provision of prescription medications has been contractually allocated to a third party medical care provider.   Provision of transitional

---

[3] In fact, third party medical providers under contract to the District provide medical services at the District's correctional facility.  This entity, Center for Correctional Health and Policy Studies, Inc. ("CCHPS" or "medical provider"), is not a party to this action.  It was a CCHPS physician that wrote the prescription for plaintiff's HIV-related medications to be administered and distributed at her release date.  (Complaint ¶ 25).

medications is not a constitutional right of each and every inmate.  Instead, that decision must be left to the sound discretion of the policy-makers of the District.

## II.  FACTUAL BACKGROUND

Plaintiff was committed to the custody of the Attorney General for imprisonment on July 27, 2005.[4]  Plaintiff underpins her claims for insufficient medical attention with two factual allegations:  First, she alleges that she had difficulty accessing medications while incarcerated (Complaint ¶¶22-23).  Secondly, she asserts that medications were not provided to her upon release from incarceration (Complaint ¶¶24-26).  Plaintiff's medical records support these allegations; however, her medical records also reflect Plaintiff's failure to answer questions honestly or to attend to her own medical requirements by alerting her medical care providers and the District Defendants of her HIV status.  This failure to inform the District Defendants of her medical condition occurred over a period of years.  (*Compare*, Jail Records, Exhibit "A" with Medical Records[5]).  Additionally, her medical records show that Plaintiff was informed by the treating physician to ask the guards to get her medications "from the pharmacy" when she was released.  (Medical Records, page 2).  Moreover, for a six to eight month period prior to being incarcerated, Plaintiff received no medication for her condition.  (*Id*. page 55).  A recitation of these indisputable facts appears nowhere in the complaint.

---

[4] Contrary to plaintiff's assertions in paragraph 22 of her complaint, plaintiff did not begin her incarceration until July 27, 2005.  (*See* Exhibit "A" jail records) .Her complaint alleges that she entered custody on June 26, 2005, almost a full month prior.

[5] Plaintiff's "medical records" will be the subject of a motion to file under seal and are not attached hereto; however, District Defendants aver that there is no prejudice to the plaintiff for the failure to append the records here  since plaintiff obtained a copy of the records pursuant to the D.C. Freedom of Information Act on March 22, 2006 prior to instituting this suit. (*See*, Medical Records page 1).  District Defendants will reference plaintiff's medical records only to the extent that she has already raised her medical conditions in her complaint.    District Defendants will not include in the body of its motion papers any medical references that do not pertain to the HIV-status, but request an opportunity to later address any such issues, if necessary, after the appropriate protective order(s) have been entered.

When viewed in conjunction with her medical records, Plaintiff's complaint actually speaks to the District Defendants' defenses, as well as Plaintiff's claims. Paragraph 22 of Plaintiff's complaint alleges, *inter alia*, that "she was HIV positive and suffered from symptoms of toxoplasmosis—a brain infection that is well known to pose particular risks to persons who are HIV-positive . . .—during her first several days of incarceration." (Complaint ¶ 22). . . . According to Plaintiff's complaint, "[D]efendants knew or reasonably should have known, about [her] medical condition and her need for medication." (*Id*.)

District Defendants defend by stating that Ms. Rankin failed in her responsibility to inform the District Defendants, or their agents, of her HIV-positive status, as well as any other medical condition that she may have suffered. At most, the treating physician should have done more to assure that the prescription was filled and the medications distributed to the Plaintiff.

That being said, Plaintiff's medical records make clear that it was her responsibility to tell the correctional officers that they must get her prescription from the pharmacy, as directed by her doctor. (Medical records, page 2). This is not a case where the correctional officers ignored Plaintiff's requests. This is not a case where the correctional officers thwarted Plaintiff's requests for her medications. If anything, this is a case where the message for the medications was not fully or clearly relayed starting with the treating physician to the Plaintiff. This Court should not "kill the messenger" by raising this singular circumstance to constitutional levels.

Out of an abundance of caution for the health of all inmates and staff, the District Defendants undertook a comprehensive medical screening of the Plaintiff on her first day of incarceration, July 27, 2005. (Medical Records, pages 56-58). Her vitals were normal,[6] and when asked directly did she suffer from HIV-positive. Plaintiff responded "No." (Medical

---

[6] Fed. R. Civ. Pro. 201—This Court may take judicial notice that vital signs for an adult fall within the range of plaintiff's, to wit: pulse 98, blood pressure 119/80, and body temperature 98.3F.

records, page 56). She clearly admitted to other medical conditions for which she was treated or had received treatment, but not the HIV status.

Thus, Plaintiff is correct that "during her first several days of incarceration" she did not receive HIV medications. (Complaint ¶22). That is for good reason. She did not receive these medications because she did not tell the District Defendants that she was HIV-positive; she did not share critical information that was crucial to her personal health and medical condition.

A few days later, on August 1, 2005, Plaintiff complained of a vision problem and headache. (Medical records, page 57). Again, there was no alert or communication to the District Defendants that she suffers from a serious medical condition. (*Id*.)

Finally on August 4, 2005, Plaintiff shared her HIV-positive (and other) medical history with the District Defendants' medical care providers, who transcribe the following admission:

> Inmate was admitted on 7/27/05 at CDF. **At that time he did not disclose that he had full blown AIDS with CD4 -3, and did not say that he had not received any antivirals and antibiotics prophylasis (sic) for the past 6-8 months.** The reasons he attributeds to lack of insurance. Todays (sic) he comes to Urgcare (sic) complaining that he has had headaches since his admission, with fever, chills and neck pains.

(emphasis added) (*Id.* at page 55.) Upon learning of the HIV-positive status, the District Defendants' medical providers took emergency action to, "transport to hospital right now via special conveyance." (*Id*.) She was admitted to the hospital "urgent care" unit for several days and released to a special section of the jail with a prescription for medications to be issued to her.

Given Plaintiff's personal knowledge that she suffered from HIV/AIDS and toxoplasmosis, it would be reasonable to presume that she would avail herself of the medical help that the District Defendants provided; however, this is not the case here. In fact, Plaintiff did two things to counter the medical advice of the District Defendant's medical providers. First,

she refused to take her medications. (Medical records pages 44, 55-56). Second, she still denied that she was HIV-positive to medical providers. (*Id*. at page 51). Moreover, she preferred to be in the correctional facilities' general population, notwithstanding the fact that the medical providers placed her in a special unit. (*Id*. at 53).

Prior to her release, Plaintiff was advised on November 30, 2005, by her treating physician, that she should tell the officer at the Receiving and Discharge Unit when she was released to get her medications from the pharmacy. (Medical Records page 2). Plaintiff was released on December 2, 2005. Plaintiff does not allege in her complaint that she instructed the officer to get her medications "from the pharmacy." Rather, Plaintiff claims that she was not provided with medications upon her release and that as a result she became ill.

The District has acknowledged the need to provide bridge medications to inmates leaving incarceration. (Complaint ¶¶15-16). In this case, however, the failure of the patient to receive those medications is not a failure, as a matter of law, or the fault of the District Defendants.

The District contracts with independent contractors to provide medical services to its prisoners, and it contracts with independent contractors to provide jail and correctional facilities. The applicable law reflects that it is these entities that would be responsible for harm to the Plaintiff, if any, along with the harm that she caused herself by failing to disclose her HIV-positive status.

As a matter of law, Plaintiff misstates the applicable standard for the provision of transitional or "bridge medications" at paragraph 13 of her complaint. Therein, she purports to state the District's constitutional duty under the Eighth Amendment:

> Includes providing outgoing prisoners with transitional or "bridge" medications. An inmate who receives treatment while in custody, and who continues to require medication when he or she is released, must be provided with a temporary or bridge supply of medications sufficient to

> ensure that medication is available during the period of time reasonably
> necessary to permit him or her to consult a physician and obtain a new
> supply.

(Complaint ¶ 13). This may be the legal standard that Plaintiff hopes that this District

Court and this Circuit will apply; but, as yet, it is not the law of this Circuit.[7] Instead,

under the guise of a factual allegation, Plaintiff superimposes, without any legal basis,

a constitutional obligation in order to achieve a desired result.

Lastly, Plaintiff raises several factual issues in her complaint that allegedly occurred

before and after her incarceration which this Court should strike, or in the alternative, dismiss in

its consideration of this motion. For example, Plaintiff raises issues regarding conditions at the

D.C. Jail going back over 25 years (Complaint ¶12-13). She also infers that a policy forms the

policy standards (*Id*. at ¶¶ 14-16). Plaintiff cites to committee hearings where she states that

medical conditions and services for inmates were discussed. (*Id*. at ¶¶ 18-19). These extraneous

facts have absolutely nothing to do with Plaintiff's claim—the alleged failure to treat **her** while

incarcerated and the purported failure to provide **her** with bridge medication.

Plaintiff also alleges a relapse of toxoplasmosis because of a failure to get her

medications after she was released from jail. (Complaint ¶¶27-31) Since Plaintiff, however,

failed to file a verified complaint, this unsubstantiated averment should not be considered by the

Court.

In summary, the allegations of Plaintiff's complaint, at best, state no more than mere

negligence arising from miscommunication. Her claims against the individual District

Defendants should fail because she did not allege, nor can she, that either had personal

---

[7] *But cf.*, *Wakefield v Thompson*, 177 F.3d 1160 (9th Cir. 1999) (A correctional officer's **refusal** to provide inmate with prescribed medication upon his release may support a claim of deliberate indifference to inmate's serious medical needs.) Plaintiff, at bar, has not claimed that any District Defendant, agent, or employee refused to supply her prescribed medication, nor can she.

knowledge or a state of mind consistent with the imposition of liability.  Lastly, her pendent

common law negligence claims should be dismissed for lack of jurisdiction of this Court.


### III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it

appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove

any set of facts that would justify relief.  *See Conley v. Gibson*, 355 U.S. 41, 45 (1957).  The

moving party is entitled to judgment if there are no allegations in the complaint that could

provide a basis for recovery.  *Se, Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987).

Although the non-moving party enjoys the benefit of all inferences that reasonably can be

drawn from the allegations alleged in the complaint, bare conclusions of law—or sweeping and

unwarranted averments of fact—will not be deemed admitted for purposes of a motion under

Rule 12(b)(6).  *Id.*   The court need not accept inferences drawn by plaintiff if such inferences are

unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions

cast in the form of factual allegations."  *Kowal v. MCI Communications* Corp., 16 F.3d 1271,

276 (1994).

Summary judgment must be granted if the moving party demonstrates "that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Although the party moving

for summary judgment has the burden of demonstrating the absence of any material facts and the

right to judgment as a matter of law, the movant is not obligated to present supporting evidence.

*See Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993).  Instead, the moving party

need only assert that there is a lack of necessary evidence to support plaintiff's case.  At that

point, the burden shifts to the non-moving party to show the existence of a genuine issue of

material fact.  *See id.; Beard v. Area Transit Authority,* 631 A.2d 387, 390 (D.C. 1993).

Theoretical speculations, unsupported assumptions, and conclusory allegations do not rise to the

level of a genuine issue of fact.  *Ibid.*

## IV.  ARGUMENT

### A.     *The Complaint Fails to State a Claim for Which Relief May Be Granted*

The Plaintiff's complaint should be dismissed with prejudice for three primary reasons.

First, Plaintiff cannot establish an underlying constitutional violation, let alone any actions on the

part of these named District Defendants which violated plaintiff's constitutional rights.  Second,

assuming a predicate constitutional violation, Plaintiff cannot establish that a custom or policy of

the District caused the violation of Plaintiff's constitutional rights.  *See Monell v. Dep't of Social*

*Serv. of the City of New York,* 436 U.S. 658, 691 (1978).  Since the constitutional claims fail, the

pendent common law claims likewise fail.  *See United Mine Workers of America v. Gibbs*, 383

U.S. 715, 726 (1966).

### B.     *Plaintiff has not Established Municipal Liability under 42 U.S.C. § 1983*

Plaintiff brought part of this suit under 42 U.S.C. § 1983 (1988) against the District and

individually named Defendants. (Complaint, Count 1-4).  As a matter of law, she seeks to hold

the Defendants liable based upon their alleged deliberate indifference to medical needs (Count

1), failure to train/supervise (Count 2), cruel and unusual punishment under the Eighth

Amendment (Count 3), and discriminatory treatment violative of the Equal Protection clause

(Count 4).  Notwithstanding this plethora of legal claims, her factual allegations are simple and

fail to state a claim for which relief may be granted:  She seeks to hold the District Defendants

liable predicated on an alleged custom or policy of deliberate indifference or ignorance of law

because of the failure to receive and transmit the message about the prescription prepared for the Plaintiff upon her release from jail. Mere negligence, however, on the part of a municipality does not establish 42 U.S.C. § 1983 liability. *See Hayes v. Faulkner County,* 388 F.3d 669, 674 (8th Cir. 2004).

### C.  Count I Should be Dismissed because Plaintiff Cannot Establish the Requisite Deliberate Indifference to Sustain her Eighth Amendment Claim

The appropriate standard for determining whether the District Defendants may be held liable is when the municipality's "policy or custom . . . inflicts the injury." *See, Daskalea v. District of Columbia*, 227 F. 3d 433, 441 (2000) (quoting *Monell v. New York Dep't of Social Services,* 436 U.S. at 694 (1978)). Governmental entities can be found liable under §1983 only where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," *Arnold v. Moore,* 980 F. Supp. 28, 36 (D.D.C. 1997) (citing *Monell,* 436 U.S. at 690), "or the injury to the plaintiff is caused by the 'persistent and widespread discriminatory practices of state officials.'" *Id.; see Monell*, 436 U.S. at 691.

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain as proscribed by the Eighth Amendment. *See id.*; *see also, Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (test under *Estelle v. Gamble, 429 U.S. 97 (1976)* is two-pronged, requiring that prisoner's medical needs be serious and that defendants display deliberate indifference to those needs). Plaintiff, however, fails to state an Eighth Amendment claim for the alleged failure to provide her with adequate medical care since she does not allege acts or omissions displaying the requisite deliberate indifference to her

serious medical needs. *See Estelle, 4*29 U.S. at 104 (1976). It is only "deliberate indifference to serious medical needs" that can offend the Eighth Amendment. *Id.*[8]

Deliberate indifference has been described as possession of "actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent harm could be inferred from [a] failure to prevent it." *Young v. Quinlan*, 960 F.2d 351, 360 n. 22 (*quoting Henderson v. DeRobertis,* 940 F.2d 1055, 1060 (7th Cir. 1991). In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Supreme Court defined the meaning of deliberate indifference, and held that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Benson v. Cady,* 761 F.2d 335, 341 (7th Cir. 1985) (defendant's failure to ensure that plaintiff received prescribed medication, and prescription of incorrect medication, causing adverse side effects, was possibly negligent, but not an Eighth Amendment violation, absent allegations of deliberate indifference or knowledge of the harm).

---

[8] The Supreme Court refers with approval to specific Circuit Courts of Appeal's decisions as illustrative of deliberate indifference; e.g.--
*Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to deliberate indifference . . .rather than an exercise of professional judgment");

*Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879 (1974) (injection of penicillin with knowledge that prisoner was allergic, and **refusal** of doctor to treat allergic reaction);

*Jones v. Lockhart*, 484 F.2d 1192 (8th Cir. 1973) (**Refusal** of doctor to treat allergic reaction);

*Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983 (1971) (prison physician **refused** to administer the prescribed pain killer and rendered leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon).
*Estelle, supra,* 429 U.S. at 104 n. 10, (emphasis added).

In the instant case, the Plaintiff does not allege that District Defendants were aware of prior violations of any Eighth or Fifth Amendment rights flowing from the medication policy. *Cf. Chestnut v. City of Quincy,* 513 F2d 91, 92 (5th Cir 1975) (indicating that complaint alleging government official had notice of past culpable conduct of subordinates and failed to prevent recurrence of such misconduct states § 1983 claim for personal liability).  Here, Plaintiff confirms that there is a policy; she does not aver that the application of the policy failed in the past for her or other inmates' needs or requests for transitional medications upon release. Without that allegation, Plaintiff's claims based upon District Defendants' deliberate indifference should fail.

### D.    Count 2 Should be Dismissed because the District Defendants Cannot be Liable under 42 U.S.C. § 1983 for Failure to Supervise or Train

For suits alleging failure to train or supervise, plaintiffs must also establish that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need.  *See City of Canton v. Harris*, 489 U.S. 378 (1989); *Dorman v. District of Columbia*, 888 F.2d 159, 165 (D.C.Cir.1989).   Plaintiff provides no facts to support her contention that the need for additional training was "obvious" other than leaping to the conclusion based on her individual incident.  Such fallacious reasoning *i.e.*, *post hoc ergo proctor hoc*, does not support a constitutional or even negligence claim.   Moreover, it is neither obvious nor inadequate that medical diagnosis training was not given to correctional officers for complex medical conditions, such as HIV/AIDS or toxoplasmosis, as discussed more fully below.

Additional training of a correctional officer would not rectify the circumstances alleged here in any case.  In this singular case, high-level medical training and supervision would be

required.  Plaintiff alleges that on the day of her release, she "requested her medications at least twice from defendant Richard Roe(s), but was told that no one knew anything about giving her 'medications.'"  (Complaint ¶ 26).

Even, assuming the correctional officers' lack of knowledge amounts to negligence based upon a failure to train/supervise, this lack of knowledge does not soar to constitutional heights. To properly allege a failure to train/supervise claim, Plaintiff must plead and prove that the correctional officers could be taught to recognize signs of her HIV-positive disability, that the HIV-positive status was a "legal" disability, they must be taught that a toxoplasmosis diagnosis is a "serious" medical condition, they must be trained to recognize the distinction between prescriptions, and the medications for disabilities or serious medical conditions, and they must be taught to recognize that these medications were prescribed for specific medical conditions.   In other words, there would have to be a medical professional present at all times to assure that the right prescriptions reached the right exiting prisoner for the right medical treatment.  This undue burden should not be a constitutional requirement of the individual corrections officers, their supervisors, the officials or the District.

Even if the individual corrections officers could be trained or supervised to the medical needs of this Plaintiff, she would be required to share with them her confidential medical status.[9] This requirement places the District Defendants in a constitutional "Catch-22" because of the confidentiality requirement of HIV-AIDS diagnosis.  The District cannot place a scarlet letter "A" on the Plaintiff's forehead[10] to disclose Plaintiff's HIV-positive status to the guards; concomitantly, she has no duty to tell the guards her HIV-status.  Thus, there was no way that additional training or supervision would overcome the stated dilemma.

---

[9] *N.O.L. v. DC,* 674 A.2d 498 (1995):  Information about a person's HIV status is specifically protected from disclosure.
[10] Hawthorne, Nathaniel (May 2, 1994). *The Scarlet Letter*, reissue, New York: Dover Publications.

The fallacy of Plaintiff's argument is that there is a constitutional right to bridge medications, and it is the failure of the District Defendants to train and supervise its correctional *officers to dispense* these medications that triggers this constitutional right.  This cannot be the case in the real world.  Guards do not have and should not have access to departing prisoners' medical records.  The District Defendants should not be constitutionally liable for failure to comply with a prisoner's request for medications.   Otherwise, every time a departing prisoner asks for an aspirin upon release, the District Defendants could be held liable.

### E.    *Plaintiff Fails to State a Viable Eighth Amendment Violation in Count 3 of her Complaint*

Plaintiff's allegation that the Defendants York and Harrison denied her prescription medication does not state a constitutional violation since the complaint fails to allege their personal knowledge or involvement sufficient to compel a finding of deliberate indifference. Not every alleged action by state actors rises to the level of a constitutional violation. The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain, or punishment, which is grossly disproportional to the severity of the crime for which an inmate is imprisoned, or which is totally without penological justification.  *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).  Not every governmental action affecting the interests of a prisoner is subject to Eighth Amendment scrutiny.  *See, Whitley v. Alberts*, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness . . . that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause . . ." *Id*. at 319.

To state a claim for cruel and unusual punishment in the medical context, it is well-settled that the plaintiff must allege, at a minimum, "deliberate indifference to serious medical needs" or conduct that amounts to "unnecessary and wanton infliction of pain." *See Cox v. District of*

*Columbia*, 834 F.Supp. 439, 441 (D.D.C. 1992). Further, "in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 442.

In *Cox*, the plaintiff claimed that he was deprived of a timely refill for his glaucoma medication on approximately twelve occasions, each interval lasting between three and fourteen days. *Id.* at 440. He further alleged that this deprivation caused him to suffer "great mental anguish and fear, … substantial physical pain in his head and eyes, as well as blurred vision." *Id.* (ellipses in original).

The court held that, although the medical need was serious, the "allegations of delay by themselves do not meet the standard of showing either harm to the plaintiff or evidence of deliberate indifference." *Id.* at 442. The court concluded that, "[u]ltimately, here, there is no evidence of deliberate indifference even approaching the circumstances previously noted by the *Estelle* Court[11] as meeting that definition." *Id.* at 443; *see also Herndon v. Whitworth*, 924 F. Supp. 1171, 1173 (N.D. Ga. 1995) (no Eighth Amendment violation where plaintiff, despite repeated complaints, was provided wrong medication and suffered several epileptic episodes as a result); *Bryan v. F.C.I. Otisville*, 897 F. Supp. 134, 137 (S.D.N.Y. 1995) (no Eighth Amendment violation where plaintiff allegedly was denied prescription medication for three days despite his repeated requests; his complaints of fever, insomnia, and infection were ignored; and he suffered fever and developed mouth infection); *Nolley v. County of Erie*, 776 F. Supp. 715, 740 (W.D.N.Y. 1991) (no Eighth Amendment violation where prison official failed to provide AZT "at times" to HIV-positive inmate); *Glover v. Ridley*, No. 93-492 SSH, 1994 U.S. Dist. Lexis 1031 (D.D.C. 1994) (no Eighth Amendment violation where prison pharmacy failed to provide AZT on one occasion to HIV-positive prisoner); *Benson v. Cady,* 761 F.2d at 341 (defendant's

---

[11] *Estelle v. Gamble, 4*29 U.S. 97 (1976).

failure to ensure that plaintiff received prescribed medication, and prescription of incorrect medication, causing adverse side effects, was possibly negligent, but not an Eighth Amendment violation, absent allegations of deliberate indifference or knowledge of the harm).

Moreover, the Supreme Court has cautioned federal and state courts against enlarging the "commodious contours of section 1983 of the Fourteenth Amendment so as to displace state law." *See, e.g., Daniels v. Williams*, 474 U.S. 547 (1981), *Paul v. Davis*, 424 U.S. 693, 701 (1976).   Thus, the mere fact that the alleged conduct was performed by a state actor does not support its characterization as a constitutional wrong.  *See Daniels*, 474 U.S. at 530-532.  Rather, it is grievous and flagrant governmental abuse which demands a constitutional response.  *See Davis v. Butcher*, 853 F.2d 718, 721 (9th Cir. 1988).   Plaintiff's claim that she did not receive medications that were admittedly prescribed does not rise to the level of a constitutional violation.

The Eighth Amendment simply is not implicated by treatment that constitutes ordinary malpractice or negligence.  *See Benson 761 F.2d at 335.*  Failure to provide bridge medications, absent a willful or malicious intent, does not violate the Eighth Amendment.  There is no evidence or allegation of the necessary culpable mental state to support an Eighth Amendment violation here.  To the contrary, Plaintiff's medical records show a consistent course of treatment provided during the time period relevant to this claim.  (*See generally*, Medical records).  In light of these records, Plaintiff's claim of deliberate indifference must be rejected as a matter of law.

### F.    Plaintiff's Complaint Count 4 Fails to Allege any Violation of the Equal Protection Clause

In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate

penal interest.[12] See *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (*citing Lee v. Washington*, 390 U.S. 333 (1968) (*per curiam*).  Plaintiff's medical records belie any allegation that she received unequal treatment solely because of her disability or her HIV-positive status.  She received a consistent course of treatment, even when she did not want it.  (*See generally*, Medical records). It was Plaintiff who failed to tell the District Defendants of her HIV-positive status over the course of **two** incarcerations.  (*See*, Exhibit "A," Jail records; Medical records).  Any failure to receive treatment was because Plaintiff failed to notify the medical providers and the District Defendants of her HIV-status.

A snafu allegedly occurred at the end of the Plaintiff's jail term on December 2, 2005. Plaintiff did not receive medications that were prescribed for her.  The message was not relayed from physician, to patient, to correctional officer, to pharmacy.  No facts are pleaded, however, that would permit this Court to infer that Plaintiff was not equally treated, or that the error was the result of discrimination on the basis of Plaintiff's disability or HIV-positive status.  The very fact that the Plaintiff admits that the medical provider "had written her a prescription for transition medications for, at a minimum HIV and toxoplasmosis" (Complaint ¶ 25) shows a commitment to treating these serious medical conditions and physical ailments.

### G.    Failure to Provide Bridge Medications Cannot Give Rise to an ADA or Section 504 of the Rehabilitation Act of 1973 Claim under Count 5

Title II of the Americans with Disabilities Act addresses the right of access to public services by individuals with disabilities. The purpose of Title II is to prohibit discrimination on the basis of disability in all services, programs, and activities provided or made available by local or state governments and their affiliate agencies.

---

[12] District Defendants will assume for the purposes of this equal protection discussion that Plaintiff asserts solely that she is in the "disabled" or "disability" protected class based upon her HIV-positive status.

To establish a *prima facie* case under Title II of the ADA, a Plaintiff ordinarily must show: 1) that he is a qualified individual with a disability, 2) that he is otherwise qualified for the benefit in question, and 3) that discrimination due to his disability served as a motivating factor in his exclusion from the benefit. *See Pathways Psychosocial v. Town of Leonardtown,* 133 F.Supp.2d 772, 781 (D. Md. 2001) (citing *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir.1999))

Under either the ADA or the Rehabilitation Act, Plaintiff is obligated to show that she was "otherwise qualified" for the benefits she sought and that she was denied those benefits "solely by reason of disability." See, e.g., *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1492 (10th Cir.1992), *cert. denied*, 507 U.S. 910 (1993).   Plaintiff has not alleged any set of facts to support her contention that she was denied her bridge medications "solely by reason of disability."   Plaintiff would be less than truthful if she contends that she did not receive adequate medical care while incarcerated after she finally disclosed her condition.   (*See generally*, Medical Records)

In *Fitzgerald v. Corrections Corporation of America*, the plaintiff broke his hip while incarcerated in a prison operated by CCA.   403 F.3d 1134, 1136 (10th Cir. 2005).   The plaintiff alleged that he suffered this fracture after experiencing a diabetes-related seizure, and claimed that his injuries resulted from the prison authorities' failure to adequately treat his diabetes and to provide him with a wheelchair.  *Id.*   Plaintiff's ADA claim for these injuries failed as a matter of law.   The Tenth Circuit explained that a claim arising out of the quality of medical care provided to a disabled individual cannot give rise to an ADA violation, because such a plaintiff cannot show that he was "otherwise qualified" for the service, nor can he show that he was denied appropriate care "solely by reason of his disability."  *Id.* at 1144.   The court noted that, according to established case law:

> [W]e have held that "the term otherwise qualified cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Johnson*, 971 F.2d at 1493-94. As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say. . . that a particular decision was 'discriminatory.'" *United States v. University Hospital*, 729 F.2d 144, 157 (2nd Cir. 1984) (Rehabilitation Act).

*Id.* at 1144.

Furthermore, the Seventh Circuit has held that discovery is not always necessary to make such a determination, affirming a Rule 12(b)(6) dismissal of a complaint, because "[a]llegations of discriminatory medical treatment do not fit into the four-element framework required by section 504 [Rehabilitation Act]. Rather, an examination of these elements as a whole suggests that the statute simply does not address such claims." *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 121 (7th Cir. 1997); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (ADA does not create remedy for medical malpractice.).

Here, when stripped of its conclusory legalese, the complaint alleges nothing more than that the District's private contractor's made a proper medical decision regarding Plaintiff's need for bridge medication, but failed to communicate the delivery of the medication. Pursuant to established law, such an allegation cannot support the Plaintiff's claim that she was "otherwise qualified" under the ADA or Section 504 of the Rehabilitation Act of 1973, or that she was discriminated against "solely because of" her disabilities.

Under the facts presented here, there is no room for an inference that the District policymakers, in permitting their contractors to make medical decisions, such as providing bridge medications, were deliberately indifferent to Plaintiff's rights under the ADA or Section 504 of the Rehabilitation Act of 1973. This analysis similarly establishes that the District, in

having policies in place permitting its contractors to make these medical judgments and requiring them to provide bridge medications, could not be considered deliberately indifferent.

### H.    District Defendants, York and Harrison, are Entitled to Qualified Immunity and All Claims against them Should be Dismissed

Plaintiff seeks monetary damages as relief, for which Defendants, York and Harrison, are immune.  Since these Defendants are sued in their personal or individual capacities, they are immune from an award of damages under the doctrine of qualified immunity.

To the extent that either Defendants were acting in a personal or individual capacity, the U.S. Supreme Court has long held that public officials in their individual capacities are entitled to some form of immunity from suits for damages.  *See Spalding v. Vilas,* 161 U.S. 483, 498 (1896).  This protection was expressly granted to prison officials.  *See Procunier v. Navarette,* 434 U.S. 555 (1978).

It is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them.  *See Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Lederman v. United States,* 291 F.3d 36 (D.C. Cir. 2002).  Qualified immunity arguments are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, *a ruling on that issue should be made early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed the importance of resolving immunity questions at the *earliest possible stage* in litigation.'"  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (emphasis added).

In its 2001 *Saucier* decision, the Supreme Court solidified the proper analytical framework for ruling on qualified immunity arguments. 533 U.S. at 200-02. First, the trial court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, … the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

To avoid dismissal when a defendant raises a claim of qualified immunity, "the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations to show that the officials violated the clearly established law." *Woodward v. City of Worland,* 977 F.2d 1392, 1396 (10th Cir. 1992), *cert. denied,* 509 U.S. 923 (1993).

In the case at bar, Plaintiff alleges, at best, a negligent failure by the District's independent medical provider to coordinate the provision of medications already prescribed to the inmate upon release from jail. Clearly, while in jail, Plaintiff received reasonable medical services once she made the District Defendants aware of her HIV medical history. (*See, generally,* Medical Records). There was no violation of "clearly established law" by Defendants York or Harrison, and there should be no liability arising therefrom. Moreover, she has not alleged that other inmates failed to receive medications when they were released from jail. In fact, to the contrary, she acknowledges that the contract between the District of Columbia and its medical care provider for prisoners contains a provision for bridge medications. That fact alone shows a thought process on the part of the District officials to provide these medical prescriptions upon release of the inmate. To the extent that there was a singular failure of the process does not rise to the level of a constitutional wrong.

There is a presumption in favor of immunity for public officials acting in their individual capacities. *See Hidahl v. Gilpin County DSS*, 938 F.2d. 1150, 1155 (10th Cir. 1991). Plaintiff has not alleged facts that sufficiently overcome this presumption, nor can she.

Nor has Plaintiff alleges that either York or Harrison "knowingly" violated any law with regard to provision of bridge medications or medical services during Plaintiff's incarceration. As a matter of law, the qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law. *See id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Neither York nor Harrison were "deliberately indifferent" as a matter of law. Deliberate indifference has been described as possession of "actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent harm could be inferred from [a] failure to prevent it." *Young,* 960 F.2d at 360 n. 22 (quoting *Henderson v. DeRobertis,* 940 F.2d at 1060).

More pointedly, Plaintiff does not allege that Defendants York or Harrison had any personal involvement in her failure to receive medical care or prescriptions. For this reason alone York and Harrison are entitled to a dismissal with prejudice. Personal participation is an essential allegation in a 42 U.S.C. § 1983 action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir.1976). Here, allegations setting forth any personal participation by Defendants York or Harrison are wholly absent.

Finally, Defendants York and Harrison assert that exposing them to personal liability in these circumstances would be at odds with the policies underlying the doctrine of qualified immunity. *See Harlow*, 457 U.S. 800 (1982). The risk of personal liability would make it virtually impossible for governments to fill positions such as those occupied by these individual

defendants, as few qualified persons would be willing to assume this responsibility with the accompanying risks of liability.

**I.      The District of Columbia Cannot be Liable Under §42 U.S.C. §1983 on a Theory of Respondeat Superior for any Individual Correctional Officer's Alleged Constitutional Violations**

A municipality cannot be held liable under 42 U.S.C. §1983 based on the theory of *respondeat superior. See Monell,* 436 U.S. at 694; *see also Miller v. Barry*, 698 F. 2d 1259 (D.D.C. 1983); *Gladden v. Barry*, 558 F. Supp. 676 (D.D.C. 1983); *Daughtry v. Arlington County*, 390 F. Supp. 307 (D.D.C. 1980); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Tarpley v. Greene*, 221 U.S. App. D.C. 227, 684 F. 2d 1 (D.C. Cir. 1982). In *Fox v. District of Columbia*, 990 F. Supp. 13 (D.D.C. 1997), the court recognized that the law is settled as far as what constitutes municipal liability in the District of Columbia. The court stated that "it is now rudimentary 'hornbook' law that §1983 does not countenance *respondeat superior* liability for local governments; rather, it authorizes suites for constitutional deprivations inflicted pursuant to government custom or policy." *Id.* at 20; *see also Monell,* 436 U.S. at 690-95.

Instead, to recover against the District of Columbia, a plaintiff must allege and prove that a municipal custom or policy was the "moving force" behind the constitutional violation. *Canton,* 489 U.S. at 385 (citing *Monell,* 436 U.S. at 694-95); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Oklahoma City v. Tuttle,* 471 U.S. at 819 (citing *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)). In other words, "only when the 'execution of the government's policy or custom . . .inflicts the injury' [may a] municipality. . . be held liable under § 1983." *Id.* The Supreme Court has held that, "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged" in order for a municipality to be held liable for civil damages under § 1983. *Oklahoma City v. Tuttle,* 471 U.S. at 823.

It is well-settled that "public officials are not vicariously liable for the acts of their subordinates." *Arnold*, 980 F. Supp. at 35 (D.D.C. 1997). "*Respondeat superior* cannot form the basis for liability for a §1983 claim." *Id.*; *see also Monell*, 436 U.S. at 691; *Haynesworth*, 820 F. 2d at 1259 (1987). The court further concluded that "[h]igh level public officials are not employers of their subordinates, but rather are fellow governmental servants, and thus cannot be held liable on the basis of *respondeat superior*." *Id.*

**J.     Defendants Cannot Be Held Liable for the Negligent Conduct of an Independent Contractor**

"[A]n inadvertent failure to provide adequate medical care cannot be said to constitute [a violation of the Eighth Amendment.]" *Estelle,* 429 U.S. at 105. This is true even when the alleged injuries result from the negligence of an independent contractor; in this case, the medical provider who prescribed the Plaintiff's medications prior to her release from jail. *See Herbert v. District of Columbia,* 716 A.2d 196 (D.C. 1998).

In the case at bar, the physician, who was not a District employee, told the Plaintiff that she should tell the guard to tell the pharmacy to give Plaintiff the medications upon her release from incarceration. Arguably, the physician should have been more circumspect and prudent in his instructions in order to assure that the appropriate medical instructions reached the pharmacy. Maybe the physician should not have left that responsibility with the Plaintiff. Maybe the physician should have contacted the pharmacy directly. In any case, the physician's failure to assure that the appropriate medical instructions were provided directly to the pharmacy amounts to no more than, at best, negligence.

The District Defendants are not responsible for the independent contractor's negligence. See *Herbert, 716 A.2d 196*. Even medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *See Brown v. Selwin*, 250 F. Supp. 2d 299 (S.D.N.Y. 1999).

In *Herbert*, the incarcerated plaintiff sued the District, alleging that the District was liable for the medical malpractice of the contractor it employed to perform medical services at the D.C. Jail. *See id*. at 197-98. Both the trial court and the appeals court disagreed, holding that the District could not be held liable for medical malpractice committed on prisoners by employees of independent contractors. *See id.*

Plaintiff acknowledges in her complaint that DOC contracts with CCHPS to provide medical services to inmates in DOC custody and that the contract requires CCHPS to provide inmates released to the community with a seven day supply of medications. (Complaint ¶ 15). If the District had a duty to provide Plaintiff with bridge medications, it is clear that this duty was properly delegated to an independent contractor. Because the District properly delegated medical services to CCHPS, the District cannot be held liable for the allegedly negligent acts performed by CCHPS.

### K.    All Non-Constitutional Claims Alleged in Counts 6 and 7 Should Be Dismissed for Lack of Subject Matter Jurisdiction

In addition to claiming constitutional violations, the complaint alleges that the District Defendants are liable for common law claims. (Complaint counts 7-8). Any such claims should be dismissed for lack of subject matter jurisdiction.

Absent any constitutional or federal statutory claims, this Court may decline to exercise supplemental jurisdiction over the common law claims asserted by the Plaintiff. *See* 28 U.S.C. §

1368(c)(3).  Furthermore, the Supreme Court has written that, once federal claims have been

dismissed, a District Court *should* dismiss pendent state law claims.  *United Mine Workers of*

*Americav. Gibbs*, 383 U.S. at 726; *see also Gaubert v. Gray*, 747 F. Supp. 40, 50 (D.C. Cir.

1990).

      In *Gaubert*, the D.C. District Court dismissed the plaintiff's constitutional claims on the

grounds of qualified immunity.  *Id.*  Noting that "pendent jurisdiction is a doctrine of discretion,

not of plaintiff's right," the court also dismissed the plaintiff's four common law claims.  *Id.*

Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. at

726, the District Court wrote:

> Needless decisions of state law should be avoided both as a matter of
> comity and to promote justice between the parties, by procuring for them
> a surer-footed reading of applicable law.  Certainly, if the federal claims
> are dismissed before trial, even though not insubstantial in a
> jurisdictional sense, the state claims should be dismissed as well.

*Gaubert*, 747 F. Supp. at 50.  Here, the Plaintiff's claims do not rise to the level of a

constitutional violation.  As such, the Plaintiff's common law claims should be

dismissed.

## V.  CONCLUSION

      For all the reasons set forth above, Plaintiff's complaint should be dismissed with

prejudice or summary judgment entered in favor of Defendants.

                      Respectfully submitted,

                      LINDA SINGER
                      Acting Attorney General for the District of Columbia

                      GEORGE  C. VALENTINE
                      Deputy Attorney General, Civil Litigation Division

                      /s/ Ellen A. Efros

ELLEN A. EFROS
Chief, Equity I

/s/ Denise J. Baker
DENISE J. BAKER
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S079
Washington, D.C. 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| TROY (aka TREYSHAWN) RANKIN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-02063 (RCM) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Pursuant to Fed. R. Civ. P. 56, Defendants, by and through undersigned counsel, hereby respectfully submit this Statement of Material Facts as to which there is no genuine dispute in the above-captioned case.

1.      Plaintiff was convicted of a misdemeanor sexual solicitation offense in case M-281-04 on April 14, 2004 and sentenced to one hundred eighty (180) days in jail, execution of sentence suspended to all but eighty (80) days in jail.  (Jail Records, page 1)

2.      During a comprehensive medical screening on April 14, 2004, Plaintiff stated that she was not HIV-positive.  (Medical Records, page 63)

3.      Plaintiff was released on probation on July 1, 2004.  (Jail Records, page 1)

4.      Plaintiff was convicted of another misdemeanor sexual solicitation offense and sentenced to thirty (30) days in jail on July 27, 2005 in case M-6014-05.  (Jail Records, page 4)

5.      Plaintiff was committed to the custody of the Attorney General for imprisonment on July 27, 2005.  (Jail Records, page 4)

6.      Subsequently, Plaintiff's probation was revoked in case M-281-04 on August 15, 2005. She was ordered to serve her previously suspended sentence of one hundred eighty (180) days in jail but would receive credit for time served. (Jail Records, page 3)

7.      The sentences in M-6014-05 and M-281-04 were consecutive. (Jail Records, pages3- 4)

8.      Plaintiff was incarcerated at the Central Detention Facility (CDF) and Correctional Treatment Facility (CTF), operated by Correctional Corporation of America (CCA). Plaintiff was incarcerated at CDF on the following dates: July 27, 2005 through August 9, 2005; September 2, 2005 through September 16, 2005; and September 24, 2005 through October 11, 2005, and December 2, 2005. Plaintiff was incarcerated at CTF on the following dates: August 9, 2005 through September 2, 2005; September 16, 2005 through September 24, 2005; and October 11, 2005 through December 2, 2005. (Jail Records, page 5)

9.      Again, Plaintiff denied being HIV-positive during a comprehensive medical screening on July 27, 2005. (Medical Records, page 56)

10.     On August 4, 2005, Plaintiff complained that she had been suffering from headaches, fever, chills, and neck pains since her admission. (Medical Records, page 55)

11.     Plaintiff disclosed on August 4, 2005, not at her admission on July 27, 2005, that she has AIDS and had not received any antivirals and antibiotics prophylaxis during the previous six to eight months which she attributed to her lack of insurance. (Medical Records, page 55)

12.     Plaintiff admitted to her treating physician on August 12, 2005 that she was diagnosed with HIV in 2003. (Medical Records, page 46)

13.     Plaintiff received medical treatment for AIDS and related illnesses during her incarceration in 2005. (Medical Records, pages 2-59)

14.     The medical treatment was provided by Center for Correctional Health and Policy Studies, Inc. (CCHPS) pursuant to CCHPS's contract with D.C. Department of Corrections (DOC).  (Complaint ¶ 16)

15.     Neither CCHPS nor CCA is named as a defendant in this suit.  (Complaint)

16.     At various times during her incarceration, Plaintiff refused to take the medications prescribed to her by her treating physician. (Medical Records, pages 44, 51, 52, 53)

17.     At various times during her incarceration, Plaintiff refused to cooperate with the medical staff who attempted to take her vital signs.  (Medical Records, pages 51, 52)

18.     Plaintiff was advised on November 30, 2005, by her treating physician that she should tell the officer at the Receiving and Discharge Unit when she is released to get her medications from the pharmacy.  (Medical Records, page 2)

19.     Plaintiff was released on December 2, 2005.  (Complaint ¶ 26)

20.     Plaintiff does not allege in her complaint that she instructed the officer at Receiving and Discharge Unit to get her medications from the pharmacy. (Complaint)

<div style="margin-left:40%">

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE  C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Ellen A. Efros
ELLEN A. EFROS
Chief, Equity I

/s/ Denise J. Baker
DENISE J. BAKER
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S079
Washington, D.C. 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

</div>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————  )
                                               )
TROY (aka TREYSHAWN) RANKIN    )
                                               )
                    Plaintiffs,            )
          v.                                  )          Civil Action No. 06-02063 (RCM)
                                               )
DISTRICT OF COLUMBIA, *et al.*,    )
                                               )
                    Defendants.          )
———————————————————————  )

<u>ORDER</u>

Upon consideration of the Defendants' Motion for Summary Judgment, the memorandum of points and authorities filed in support thereof, any opposition thereto, and the entire record herein, it is by the Court this ___ day of _____, 2007:

ORDERED, that the Defendants' motion for summary judgment shall be and the same is hereby granted; and it is further

ORDERED, that Plaintiff's complaint be and hereby is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Denise J. Baker
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S079
Washington, D.C. 20001

Robert N. Eccles
Andrea J. Worden
Jason A. Abel
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC  20006-4001

Philip Fornaci
Ivy Lange
Washington Lawyers' Committee for Civil Rights
11 Dupont Circle, NW, Ste. 400
Washington, DC  20036

# DC Department of Corrections
## Face Sheet



| | | |
|---|---|---|
| DCDC #: **276889** | Name: **RANKIN, TROY** | PDID #: **423381** |
| Commitment Date: **04/14/2004** | Admission type: **SENTENCED MISDEMEANOR** | |

Race: **BLACK**         DOB: **06/17/1968**     Sex: **M**    Height: **507**    Weight: **163**

Sentence type:                          Location: **CENTRAL DETENTION FACILITY (CDF)**

Effective date: **04/14/2004** Short Term Date: **07/01/2004**    Full Term Date: **07/01/2004**    Parole Elig. Date: **07/01/2004**

Agg. Sentence: **0 Years 0 Months 80 Days**        **0 Years 0 Months 80 Days**

Jail credit:    **1 day(s)**

# Sentencing notes

JAIL CREDIT,CASE#M281-04(A), 01/04/04(ARREST)=1 DAY TOTAL JAIL CREDIT.

# Charges

| Case number **M0028104A** | **SEXUAL SOLICITATION** | **Misdemeanor** |
|---|---|---|

Charge typ    **SPLIT SENTENCE**

**SENTENCING REFORM AMENDMENT ACT**

Minimum sentence 0 year(s), 0 month(s), 80 day(s)    Maximum sentence 0 year(s), 0 month(s), 80 day(s)

Sentence Status:   **SPLIT SENTENCE**

Judge:   **CHRISTIANK**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 04/14/2004 | 04/14/2004 | | | 04/14/2004 | | |

Charge notes:    **SENTENCED 04/14/04 TO 180 DAYS IN JAIL, ESS TO ALL BUT EIGHTY(80) DAYS IN JAIL.**

# Detainers

| |
|---|
| Detainer type |
| Agency |
| Released / release reaso |
| Release date |

# DC Department of Corrections
## Face Sheet

| | | |
|---|---|---|
| **DCDC #:** 276889 | **Name:** RANKIN, TROY | **PDID #:** 423381 |
| **Committment Date:** 04/14/2004 | **Admission type:** SENTENCED MISDEMEANOR | |

**Race:** BLACK       **DOB:** 06/17/1968    **Sex:** M    **Height:** 507    **Weight:** 163

**Sentence type:**              **Location:** CENTRAL DETENTION FACILITY (CDF)

**Effective date:** 04/14/2004 **Short Term Date:** 07/01/2004    **Full Term Date:** 07/01/2004    **Parole Elig. Date:** 07/01/2004

**Agg. Sentence:** 0 Years 0 Months 80 Days        0 Years 0 Months 80 Days

**Jail credit:** 1 day(s)

**Prepared and Certified by:** JUDAH FRIEDMAN         4-15-04
Print                                    Signature                          Date Prepared
Legal Instruments Examiner

Denise Z Thomas                         4-19-04
Print                                    Signature                          Date Reviewed
Record Office Supervisor

LIE



# DC Department of Corrections
## Face Sheet

| | | |
|---|---|---|
| DCDC #: **276889** | Name: **RANKIN, TROY** | PDID #: **423381** |

Commitment Date: **07/27/2005**   Admission type: **SENTENCED MISDEMEANOR**

Race: **BLACK**        DOB: **06/17/1968**   Sex: **M**   Height: **507**   Weight: **163**

Sentence type:                  Location: **CORRECTIONAL TREATMENT FACILITY**

Effective date: **07/27/2005** Short Term Date: **12/02/2005**   Full Term Date: **12/02/2005**   Parole Elig. Date: **12/02/2005**

Agg. Sentence: **0 Years 0 Months 210 Days**        **0 Years 0 Months 210 Days**

Jail credit:   **81 day(s)**

## Sentencing notes

**JAIL CREDIT:**
**01/04/04 THRU 01/04/04 =  1**
**04/14/04 THRI 07/01/04 = 79**
**03/16/05 THRU 03/16/05 =  1**
*3*              **TOTAL    81 DAYS**

## Charges

Case number **M0028104A**       **SEXUAL SOLICITATION**                    **Misdemeanor**

Charge typ   **PROBATIONER**

**SENTENCED AND SERVING**

**Minimum sentence 0 year(s), 0 month(s), 180 day(s)    Maximum sentence 0 year(s), 0 month(s), 180 day(s)**

**This charge is consecutive to charge M0601405A**

**Sentence Status:**   PROBATIONER

**Judge:**  **CHRISTIANE**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 08/15/2005 | 08/15/2005 | 08/15/2005 | | 08/15/2005 | | |

Charge notes:   **AS TO COUNT 'A' - (180) ONE HUNDRED AND EIGHTY DAYS IN JAIL WITH CREDIT FOR TIME SERVED.**

 Sentence order is out of sequence.  Sentence Order # 2.00 should be 1.00.  Correct sequence order number and recalculate this charge, as well as, the Sentencing Summary Screen.

# DC Department of Corrections
## Face Sheet

| | | |
|---|---|---|
| DCDC #: **276889** | Name: **RANKIN, TROY** | PDID #: **423381** |

Commitment Date: **07/27/2005**    Admission type: **SENTENCED MISDEMEANOR**

Race: **BLACK**    DOB: **06/17/1968**    Sex: **M**    Height: **507**    Weight: **163**

Sentence type:    Location: **CORRECTIONAL TREATMENT FACILITY**

Effective date: **07/27/2005** Short Term Date: **12/02/2005**    Full Term Date: **12/02/2005**    Parole Elig. Date: **12/02/2005**

Agg. Sentence: **0 Years 0 Months 210 Days**    **0 Years 0 Months 210 Days**

Jail credit: **81 day(s)**

---

Case number **M0601405A**    **SEXUAL SOLICITATION**    **Misdemeanor**

Charge typ    **CONSECUTIVE SENTENCE**

**SENTENCING REFORM AMENDMENT ACT**

**Minimum sentence 0 year(s), 0 month(s), 30 day(s)    Maximum sentence 0 year(s), 0 month(s), 30 day(s)**

Sentence Status:    CONSECUTIVE SENTENCE

Judge:    **JOHNSONJ**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 07/27/2005 | 07/27/2005 | 07/27/2005 | | 07/27/2005 | | |

Charge notes:    **SENTENCED 07/27/05 TO THIRTY(30) DAYS IN JAIL.**

 Sentence order is out of sequence.  Sentence Order # 1.00 should be 2.00.  Correct sequence order number and recalculate this charge, as well as, the Sentencing Summary Screen.

---

# Detainers

| |
|---|
| Detainer type |
| Agency |
| Released / release reaso |
| Release date |

---

Prepared and Certified by:    *h. L. Hawkins*    *L. L. Hawkins*    *8/16/05*

Print    Signature    Date Prepared
Legal Instruments Examiner

*Kevin L. Proctor*    *Kevin L. Proctor*    *12/2/05*

Print    Signature    Date Reviewed
Legal Instruments Examiner

---

# Inmate Transfer History Report
## District of Columbia Central Detention Facility - Location: 12

**Today's Date:** 12/02/2005

**Inmate Name:** RANKIN, TROY                              **Booking#** 2005-10300

| Transfer Date | From | To | Date Recieved | Sending Officer | Receiving Officer |
|---|---|---|---|---|---|
| 07/27/2005 16:27 | INITIAL | 12 | 07/27/2005 16:27 | TAYLOR, ANGELA | TAYLOR, ANGELA |
| 08/09/2005 18:10 | CENTRAL DETENTION | 11 | 08/09/2005 18:41 | TAYLOR, ANGELA | FLYTH, DEBBIE |
| 09/02/2005 23:08 | CORRECTIONAL TREA | 12 | 09/02/2005 23:08 | HOLZINGER, SHAUN | HOLZINGER, SHAUN |
| 09/16/2005 20:52 | CENTRAL DETENTION | 11 | 09/17/2005 07:07 | RHODES, YVONNE | LONDON, DAVID |
| 09/24/2005 19:44 | CORRECTIONAL TREA | 11 | 09/24/2005 19:46 | STOKES, SUSAN | STOKES, SUSAN |
| 09/24/2005 19:47 | CORRECTIONAL TREA | 12 | 09/24/2005 19:47 | STOKES, SUSAN | STOKES, SUSAN |
| 10/11/2005 16:50 | CENTRAL DETENTION | 11 | 10/12/2005 05:07 | STOKES, SUSAN | LONDON, DAVID |
| 12/02/2005 05:27 | CORRECTIONAL TREA | 12 | 12/02/2005 05:30 | RICHARDS, BYRON | RICHARDS, BYRON |