UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TROY (aka TREYSHAWN) RANKIN, <br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> )  Civil Action No. 06-02063  [RMC] <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION TO DISMISS**

**INTRODUCTION**

This case is about Defendants' admitted failure to provide a prisoner with a supply of

necessary prescription medications upon her discharge from the D.C. Jail.  The gravamen of Ms.

Rankin's complaint is that Defendants had a duty under the Eighth Amendment to provide her

with transitional (or bridge) medications upon her release, and their failure to do so violated 42

U.S.C. §1983 and deprived her of her right to be free from discriminatory treatment on the basis

of her disability under the Due Process Clause of the Fifth Amendment, Title II of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et. seq.*, and Section 504 of the Rehabilitation

Act ("Rehab Act"), 29 U.S.C. §§ 701 *et seq.*  In their Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment,[1] Defendants attempt to distract the Court from the narrow issue

at hand – whether Plaintiff's allegations are sufficient to state a claim upon which relief can be

granted – by, among other things, mischaracterizing Plaintiff's claims, improperly assigning

---

[1] *See* "Memorandum of Points and Authorities in Support of District Defendants' Motion to Dismiss Or, In the
Alternative, for Summary Judgment in Favor of District Defendants," Dkt. #6 and Dkt. #7, filed February 8, 2007.
Defendants' Memoranda of Points and Authorities are identical in both docket entries and thus we will not
distinguish between the two.  For ease of reference, Plaintiff will refer to Defendants' Memorandum ("Defs.'
Mem.") as "Defendants' brief" or "Motion to Dismiss" or "Motion for Summary Judgment" as applicable.

blame to contractors against whom Plaintiff has asserted no claims (and whom Defendants have not attempted to bring into this action as third parties), and introducing irrelevant facts about Plaintiff's previous incarcerations.  Plaintiff's allegations relating to Defendants' failure to provide her with necessary prescription medications upon her discharge from jail are more than sufficient to state claims upon which relief can be granted.  Defendants have not contested the sufficiency of her allegations with respect to her negligence claims.

Although Defendants have asked the Court to consider their motion alternatively as one for summary judgment, summary judgment at this stage is clearly premature.  Not only has no discovery yet taken place, but Defendants have not included a single affidavit in support of their motion.  Moreover, Defendants' "Statement of Material Facts As To Which There is No Genuine Issue" is irrelevant: not one of the recited "facts" bears on the resolution of any of Plaintiff's claims.[2]  Consequently, Defendants' Motion to Dismiss and/or Motion for Summary Judgment should be denied.

## I.     STANDARDS OF REVIEW

### A.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the legal sufficiency of a complaint."  *Ashford v. District of Columbia*, 306 F. Supp. 2d 9, 11 (D.D.C. 2004).  A court "does not test whether plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim."  *Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, No. 05-649 (RMC), -- F. Supp. 2d --, 2007 WL 34794, at *3 (D.D.C. Jan. 7, 2007) (internal quotation marks and citation omitted).  In deciding a motion to dismiss under Rule 12(b)(6), "the court must treat the complaint's factual allegations – including mixed questions of law and fact –

---

[2] Moreover, because Defendants have failed to authenticate the "Jail Records" and "Medical Records" they are using as exhibits to their motion for summary judgment, the Court should not consider them.  *See Carey Canada, Inc. v. California Union Ins. Co.*, 748 F. Supp. 8, 13 (D.D.C. 1990) and discussion *infra* Part XI.A.

as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Reese Bros. v. United States Postal Service*, No. 06-434 (RMU), -- F. Supp. 2d --, 2007 WL 646152, at *8 (D.D.C. March 5, 2007) (citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)).

Defendants have misconstrued the relevant standard for a motion to dismiss under Rule 12(b)(6). They repeatedly argue that Plaintiff "has not" or "cannot establish" a particular legal claim; for example: "Plaintiff has not Established Municipal Liability under 42 U.S.C. section 1983," or "… Plaintiff Cannot Establish the Requisite Deliberate Indifference to Sustain Her Eighth Amendment Claim."[3] At this stage of the proceedings, however, all the Court must do is determine whether Plaintiff "has properly stated a claim." *Braude & Margulies, P.C.,* 2007 WL 34794, at *3. Plaintiff's complaint "should be dismissed only if it appears beyond doubt that, under any reasonable reading, plaintiff[] will be unable to prove any set of facts that would justify relief." *Bynum v. District of Columbia*, 257 F. Supp. 2d 1 (D.D.C. 2002) (internal citation omitted).[4] That is not the case here.

### B.    Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Ashford*, 306 F. Supp. 2d at 11 (citing Fed. R. Civ. P. 56(c)). Summary judgment may be granted "if the pleadings,

---

[3] *See* Defs.' Mem. 11, 12.

[4] Citing no legal authority, Defendants inappropriately ask the Court to disregard the allegation in the Complaint that Plaintiff's relapse of toxoplasmosis was caused by Defendants' failure to provide her with bridge medications. *See* Defs.' Mem. 9. Their contention that Plaintiff was required to file a "verified complaint" is meritless; a verified complaint is simply not required for the Court to consider Plaintiff's allegations. *See* Fed. R. Civ. P. 11(a) ("Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit."). Section 1983 does not require a plaintiff to file a verified complaint; indeed the Supreme Court rejected a heightened pleading standard for §1983 municipal liability claims. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Similarly, Defendants cite no legal authority for their improper request that the Court strike (or not consider) Plaintiff's allegations relating to conditions in the D.C. Jail, Committee hearings relating to medical care at the DC Jail and CTF, and policy statements (including the District's own policy statement mandating that a 7-day supply of medications be provided to released inmates (*see* Compl. ¶ 15)). *See* Defs.' Mem. 9. Defendants' arguments are meritless and should be disregarded by the Court.

depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sample v. Lappin*, 424 F. Supp. 2d 187, 191 (D.D.C. 2006) (citing Fed. R. Civ. P. 56(c)). "The moving party bears the burden of demonstrating an absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A material fact is one that might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.     PLAINTIFF HAS SUFFICIENTLY ALLEGED A VIOLATION OF HER EIGHTH AMENDMENT RIGHTS AND THUS STATES A CLAIM UNDER 42 U.S.C. § 1983.

Ms. Rankin has alleged that upon her release from the D.C. Jail, Defendants failed to provide her with bridge medications that had been prescribed for her.[5] Indeed, Defendants do not dispute that she left the D.C. Jail without her prescription medications.[6] Plaintiff claims that this failure violates the Eighth Amendment's proscription against inadequate medical care, and that by failing to provide her with bridge medications, Defendants acted with "deliberate indifference" to "her serious medical needs."[7] *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Similar allegations have been held sufficient to state a § 1983 claim for the violation of a plaintiff's Eighth and Fourteenth Amendment rights. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

---

[5] Compl. ¶ 26.

[6] *See, e.g.*, Defs.' Mem. 8 (referring to "the failure of the patient to receive those medications"), 18 (referring to her medications as "admittedly prescribed").

[7] *See, e.g.*, Compl. ¶¶ 35, 50.

A.    **Plaintiff's Allegations That Correctional Officers Failed to Provide Her with Prescribed Medications upon Release from Jail Are Sufficient to Allege Deliberate Indifference to Her Serious Medical Needs and Thus State a Claim Under § 1983 for Violation of Her Eighth Amendment Rights.**

*Wakefield v. Thompson* involved a plaintiff who, shortly before his release from prison, was prescribed a two-week's supply of medication to be dispensed upon his release. On the day of his release, plaintiff asked the officer handling his release from prison about his prescribed medications, and was told, "there wasn't any medication available." 177 F.3d at 1162. The plaintiff alleged that he told the officer the medication had been prescribed, but the officer failed to call the medical staff to check on his prescription. *Id.* Plaintiff suffered a relapse of his condition eleven days later. *Id.* The court held that the allegation that the officer "exhibited deliberate indifference to [plaintiff's] serious medical needs by failing to provide him with the medicine prescribed by [the prison doctor], or to make any effort to obtain it for him" was sufficient to state a claim under § 1983 for the violation of his Eighth and Fourteenth Amendment rights. *Id.* at 1163.

The Ninth Circuit premised its holding on the Supreme Court's decisions in *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989) and *Estelle v. Gamble*, 429 U.S. 97 (1976). The court highlighted the following passage from *DeShaney*:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but *from the limitation which it has imposed on his freedom to act on his own behalf.*

5

489 U.S. at 199-200 (emphasis added in *Wakefield*) (citations omitted).

The Ninth Circuit observed that the Supreme Court, recognizing that incarceration strips a prisoner of his ability to obtain medical care "on his own behalf," has held that the state is required to provide prisoners with necessary medical care during their incarceration. *See Wakefield*, 177 F.3d at 1164 (citing *Estelle*, 429 U.S. at 103-05). The *Wakefield* court explained that as "a matter of common sense" a prisoner's ability to secure medication "on his own behalf" is not instantly restored upon release – it takes time for a discharged prisoner to find a doctor, schedule an appointment, receive a diagnosis and obtain and fill the prescription. Or, in other words, "the period of time during which prisoners are unable to secure medication 'on their own behalf' may extend beyond the period of actual incarceration." *Id.* Accordingly, the Ninth Circuit held:

> [T]he state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply. A state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs.

*Id.* at 1164.

The Ninth Circuit further held that Wakefield's allegations that the prison officer ignored the instructions of his treating doctor and failed to take any steps to inquire about the location of the medication were sufficient to state a § 1983 claim based on the failure to provide necessary prescription medications, because such allegations, if proven, would establish deliberate indifference to plaintiff's serious medical needs. *Id.* at 1164-65.

The Northern District of New York relied on the reasoning in *Wakefield* in denying the defendants' motion to dismiss in a case involving very similar circumstances to *Wakefield*. *See*

*Lugo v. Senkowski*, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000).  In *Lugo*, the plaintiff alleged

that he had surgery to remove kidney stones shortly before his release on parole and was told by

his treating physician that follow up surgery would be necessary within several weeks in order to

remove a metal stent from his kidney.  *Id.*  Plaintiff was paroled weeks later with the stent still

inside his kidney.  *Id.*  Lugo was hospitalized and in extreme pain five days after parole.  *Id.*

Defendants provided no aid in obtaining medical treatment, and Lugo's parole officer barred his

travel to undergo the second surgery by the treating physician.  *Id.*  The court noted the similarity

between Lugo's case and *Wakefield*:

>Just as in *Wakefield*, Plaintiff was undergoing continuing treatment
>at the time he was released, was in need of medical aid in the
>period immediately following that release and was denied that aid.
>
>The State has a duty to provide medical services for an outgoing
>prisoner who is receiving continuing treatment at the time of his
>release for the period of time reasonably necessary for him to
>obtain treatment "on his own behalf." *See Wakefield*, 177 F.3d at
>1164. . . . The facts as alleged by Plaintiff here support a claim that
>he was unable to obtain the necessary treatment "on his own
>behalf" and that the state had a continuing duty to protect him for a
>reasonable amount of time. . . . Taking the facts as alleged by
>Plaintiff as true, he was owed a limited duty of protection beyond
>his period of incarceration which was not satisfied by the state.

*Id.*  The court held that plaintiff's allegations that defendants did nothing to facilitate an

immediate necessary surgery ordered by his treating doctor despite their "control over their

circumstances" were sufficient to support a claim of deliberate indifference to a serious medical

need.  *Id.* at 116.

Other courts have also found *Wakefield* persuasive.  *See, e.g.*, *Prewitt v. Roos*, 160 Fed.

Appx. 609, 610-11 (9th Cir. 2005) (vacating summary judgment for the defendants where there

was no factual dispute that numerous doctors' prescriptions for pain medication for plaintiff were

deliberately not followed, and citing *Wakefield* as "clearly established" law: "a prison official

acts with deliberate indifference when he ignores the instructions of the prisoner's treating

physician or surgeon"); *Haltiwanger v. Mobley*, No. 00-1466, 2000 U.S. App. LEXIS 23717, at

*2-3 (8th Cir. Sept. 25, 2000) (reversing dismissal of plaintiff's Eighth Amendment deliberate

indifference claim where plaintiff was repeatedly deprived of medication, and citing *Wakefield*

for the principle that an "allegation that prison official has ignored instructions of prisoner's

treating physician by not dispensing prescribed medication is sufficient to state deliberate

indifference claim"); *Mizques v. Hoover*, No. CV-04-76-GF-CSO, 2006 WL 2506049, at *4, *6

(D. Mont. Aug. 28, 2006) (denying defendant's motion for summary judgment and holding that

plaintiff's allegations that defendant ignored instructions from medical staff regarding

transportation for his gallbladder surgery were sufficient to support a finding of deliberate

indifference, and citing *Wakefield* for the proposition that when a prison official "ignores the

instructions of the prisoner's treating physician," he acts with deliberate indifference).

   Defendants' argument to the contrary is that the "snafu" that led to Plaintiff not receiving

her medications does not "rise to the level of a constitutional violation."[8]  Defendants cite a

string of cases that they claim support their contention that a failure to provide prescribed

medications does not violate the Eighth Amendment.[9]  But Defendants have inaccurately

described the cases they cite; indeed, at least two of the cases squarely support Plaintiff's

arguments.  For example, in *Herndon v. Whitworth*, 924 F. Supp. 1171 (N.D. Ga. 1995), the

plaintiff was given the wrong epilepsy medication for several days, which caused the plaintiff to

have seizures, but the facility provided the correct medication once the error was discovered.

The plaintiff acknowledged that "prison officials did not ignore him or withhold medication from

him." *Id*. at 1174.  The *Herndon* court, in turn, held there was no Eighth Amendment violation

---

[8] *See* Defs.' Mem. 19, 17-18.

[9] *See* Defs.' Mem. 16-18.

because a defendant "'must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established.'"  *Id.* at 1173 (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 (11th Cir. 1994) (emphasis in original)).  This is precisely what Ms. Rankin has alleged – that Defendants repeatedly *ignored* Ms. Rankin's pleas for her medication while she was at the R&D Unit.[10]  Defendants also cite *Nolley v. County of Erie,* 776 F. Supp. 715 (W.D.N.Y. 1991) for, it is suggested, the conclusion of law that there is "no Eighth Amendment violation where prison official failed to provide AZT 'at times' to HIV-positive inmate."[11]  Defendants fail to mention that the opinion followed the close of *evidence* in a nonjury trial in which general conditions of confinement were at issue. The court concluded that:

> [t]he several instances where plaintiff's AZT was either not delivered or was delivered late, did, however, deprive plaintiff of a necessity of life under the Eighth Amendment. AZT is an absolutely vital medication for HIV+ persons because it is the only medication known to slow the advance of the disease.

*Id*. at 740 (citations omitted).

The court did not find an Eighth Amendment violation, however, because although the conduct was "deplorable," there was "not enough evidence that defendants possessed the culpable state of mind necessary to be found guilty of an Eighth Amendment violation."  *Id*.

**B.**     **Because Plaintiff's Allegations Mirror Those in *Wakefield* This Court Should Conclude That Her Allegations Are Sufficient to State a § 1983 Claim for Violation of Her Eighth Amendment Rights.**

The allegations in this case mirror those in *Wakefield:*

> According to Wakefield's complaint, [the treating physician] prescribed two-weeks worth of Navane to be dispensed by prison authorities at the time of Wakefield's release from San Quentin.

---

[10] Compl. ¶¶ 25-26.

[11] *See* Defs.' Mem. 17.

> Despite this instruction, defendant Doe failed to provide Wakefield
> with the psychotropic medication the prison doctor had determined
> that he needed. Doe, moreover, refused to contact the prison
> medical staff to inquire into the location of that medication within
> the prison, or to make any other effort on Wakefield's behalf.
> Doe's only explanation for his action was that he was too busy –
> he was running behind in paroling prisoners that day.

*Wakefield*, 177 F.3d at 1165. On the day of his release, Wakefield asked the releasing officer for

his prescription and was told that "'there wasn't any medication available.'" *Id.* at 1162. Based

on these allegations, the *Wakefield* court found that "Wakefield has alleged facts sufficient to

support a claim that Doe's actions constituted deliberate indifference to Wakefield's medical

needs." *Id.* at 1165.

Like the plaintiff in *Wakefield*, Ms. Rankin was prescribed a supply of transitional

medications to be provided to her upon her release.[12] Prior to her release, Ms. Rankin asked a

correctional officer at the Central Treatment Facility for her medications, "but was told that she

would receive them when she was released from the R&D Unit at the D.C. Jail."[13] Just like the

plaintiff in *Wakefield*, Ms. Rankin asked the correctional officers who were processing her

release for her prescription medications.[14] The correctional officers whom Ms. Rankin asked

about her prescription medications similarly failed to make any inquiries of the medical staff or

pharmacy or otherwise take steps to locate her medication.[15] Both the plaintiff in *Wakefield* and

Ms. Rankin were discharged without their medications and suffered injury as a result.[16]

---

[12] Compl. ¶ 25.

[13] *Id.*

[14] *Id.* ¶ 26; *Wakefield*, 177 F.3d at 1162.

[15] Compl. ¶ 26; *see Wakefield*, 177 F.3d at 1165 (the correctional officer not only failed to provide plaintiff with the
medication the prison doctor determined he needed, but also failed to contact the medical staff to inquire about the
location of the medication within the prison).

[16] Compl. ¶¶ 26, 28; *Wakefield*, 177 F.3d at 1162.

Defendants fail to address *Wakefield* in any meaningful way; instead, they bury a reference to it in a footnote in the introduction section of their brief,[17] and attempt to skirt its application of the *Estelle* rule in near identical circumstances as those at issue by assigning blame elsewhere. Their arguments are without merit. First, Defendants contend – without support – that the responsibility for the failure of the correctional officers in the R&D Unit to provide Ms. Rankin with her prescription medications fell on ***Plaintiff herself***. They assert that "it was her responsibility to tell the correctional officers that ***they must*** get her prescription from the pharmacy, as directed by the doctor."[18] Defendants further contend: "Plaintiff does not allege in her complaint that she ***instructed*** the officer to get her medications 'from the pharmacy.'"[19] The notion that a prisoner can effectively order or "instruct" a correctional officer to do anything is absurd and ignores the realities of incarceration. The fact of the matter is that Plaintiff, as a prisoner, was in no position to instruct the correctional offices at the R&D Unit to do anything. This inability to provide for her own medical needs is the very rationale underlying the decisions in *Estelle* and *Wakefield*. That Plaintiff asked the correctional officers who stood between her and freedom at least twice for her medications is more than sufficient to put the officers on notice of her serious medical need; they should have taken steps to ascertain the location of the medication. The failure to do so, effectively refusing Plaintiff her necessary medications, constituted deliberate indifference.

Next, Defendants attempt to point the finger at two independent contractors, Center for Correctional Health and Policy Studies, Inc. ("CCHPS") and the Correctional Corporation of

---

[17] *See* Defs.' Mem. 9, n.7.

[18] Defs.' Mem. 6 (emphasis added).

[19] *Id.* 8 (emphasis added). *See also* "Defendants' Statement of Material Facts as to Which There is No Genuine Issue" ("Defs.' Statement") ¶ 20 ("Plaintiff does not allege in her complaint that she instructed the officer at Receiving and Discharge Unit to get her medications from the pharmacy.").

America ("CCA") in suggesting that Plaintiff has sued the wrong entities and individuals.[20]  The

District argues that "applicable law reflects" that it would be the independent contractors "who

would be responsible for harm to the Plaintiff, if any."[21]  Plaintiff's claim, however, is that it was

the ***District's*** duty to provide her bridge medications upon her discharge from the D.C. Jail.[22]

Moreover, it was the individual correctional officers in the R&D Unit, among others, who were

deliberately indifferent to Ms. Rankin's serious medical needs by ignoring her inquiries about

her medications and refusing to take any steps to locate the medications.  Plaintiff has not sued

CCHPS, CCA, or her treating physician; her claims are properly asserted against the District,

prison officials, and correctional officers at the D.C. Jail.

## III.    PLAINTIFF HAS ADEQUATELY PLED A § 1983 *MONELL* CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT.

In deciding "whether a plaintiff has stated a claim for municipal liability, the district

court must conduct a two-step inquiry.  First, the court must determine whether the complaint

states a claim for a predicate constitutional violation.  Second, if so, then the court must

determine whether the complaint states a claim that a custom or policy of the municipality

caused the violation."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)

(citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Monell v. Dep't of Soc.

Servs.*, 436 U.S. 658, 694 (1978)).  Plaintiff has satisfied both steps of this inquiry.

### A.    Plaintiff Has Sufficiently Alleged a Predicate Eighth Amendment Violation.

Under the first step of the inquiry to determine whether the Plaintiff has stated a claim for

municipal liability, her complaint must "state a predicate claim of deliberate indifference by

---

[20] "Neither CCHPS nor CCA is named as a defendant in this suit."  Defs.' Statement ¶ 15.

[21] Defs.' Mem. 8.

[22] *See* Compl. ¶ 41 ("The correctional officers in the R&D Unit are responsible for providing inmates continuing to require prescribed medication with a 7-day supply of medication upon release.").

prison officials to [her] serious medical needs in violation of [her] Eighth Amendment rights under *Estelle v. Gamble*." *See Baker*, 326 F.3d at 1306. Ms. Rankin must allege that the prison officials "had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). As explained above, under *Wakefield*, the Plaintiff's allegations are more than sufficient to state a predicate constitutional violation. Ms. Rankin's strikingly similar allegations state a claim for deliberate indifference to serious medical needs under the Eighth Amendment.

**B.     Plaintiff Has Sufficiently Alleged That the District's Custom or Policy Caused the Predicate Eighth Amendment Violation.**

Ms. Rankin has also properly alleged the second prong required for municipal liability. Municipal liability requires a claim that the District's policy or custom caused the underlying Eighth Amendment violation. *See Baker*, 326 F.3d at 1306 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff must allege an "affirmative link" such that the policy was the "moving force" behind the constitutional violation. *Id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Canton v. Harris*, 489 U.S. 378, 389 (1989)). "A city's inaction . . . constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain." *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting *Harris*, 489 U.S. at 388-89 & n.7 (1989); citing *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997)). "Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard." *Baker*, 326 F.3d at 1307 (citing *Farmer*, 511 U.S. at 840-42).

1.    **Plaintiff's Allegations of Municipal Liability Are Sufficient to Defeat Defendants' Motion to Dismiss.**

Federal courts may not apply a heightened pleading standard to § 1983 cases alleging municipal liability. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Post-*Leatherman*, the D.C. Circuit explained that "[a] complaint, in other words, need not allege all that a plaintiff must eventually prove." *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996). "Rule 8(a)(2) requires that a complaint include 'a *short* and *plain* statement of the claim showing that the pleader is entitle to relief.'" *Id.* at 421 (quoting Fed. R. Civ. P. 8(2)(a)) (emphasis in *Atchinson*). Having done so, "[t]he complaint 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 422 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Plaintiff's complaint satisfies these requirements.

Ms. Rankin has alleged a custom or practice of failing to provide transitional medications to departing inmates. Specifically, the Complaint alleges: "The District of Columbia has a practice and custom of violating prisoners' Eighth Amendment rights to adequate medical care by failing to provide transitional (or bridge) medications to individuals who require continuing treatment when they are discharged from incarceration."[23] In addition, the Complaint alleges that "[d]espite the clear DOC Policy Statement and administration testimony regarding the District's duty to provide bridge medications, the failure to provide such medications to outgoing prisoners upon release is a longstanding practice and custom of the District that is deliberately indifferent to, and recklessly disregards, the serious medical needs of prisoners."[24]

---

[23] Compl. ¶ 1.

[24] *Id.* ¶ 20. Defendants' contentions that Plaintiff "does not aver that the application of the policy failed in the past for her or other inmates' needs or requests for transitional medications upon release" (Defs.' Mem. 14) and that

Ms. Rankin has also alleged that the District's custom caused the Eighth Amendment violation she suffered: "This practice, and the deliberate indifference of prison officials to Ms. Rankin's serious medical needs upon her release, deprived Ms. Rankin of her constitutional rights and caused serious physical and emotional injury to her."[25]

Finally, the Plaintiff has also sufficiently alleged the District's deliberate indifference. For example, the Complaint alleges that "[t]he failure to provide outgoing prisoners with necessary medications is a pattern, practice, or custom of the District, notwithstanding the official policy to provide a 7-day supply of medications to outgoing prisoners. In adopting this custom or practice, the District and DOC acted with deliberate indifference to, and reckless disregard for, the serious medical needs of outgoing prisoners generally, and Ms. Rankin specifically."[26]

This Court and the D.C. Circuit have held that similar allegations of municipal liability are viable. *See, e.g.*, *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (plaintiff's allegation that the District of Columbia "knew or should have known" about his mistreatment and failed to act stated a cause of action sufficient to survive a 12(b)(6) motion); *Atchinson*, 73 F.3d at 422 (reinstating plaintiff's § 1983 claims against the District of Columbia and rejecting "the District's argument that the complaint's use of the phrase 'deliberate indifference' without 'any facts, or even generalized factual allegations' regarding such alleged indifference renders the complaint inadequate."); *Ashford*, 306 F. Supp. 2d at 13 ("For purposes of withstanding a motion to dismiss, Mr. Ashford has adequately averred that 'failures [of the defendants] . . . to notify those [transferee] penal and correctional entities . . . of those threats to

---

Plaintiff "has not alleged that other inmates failed to receive medications when they were released from jail" (Defs.' Mem. 23) are without basis.

[25] Compl. ¶ 1.

[26] *Id.* ¶ 36.

the plaintiff's personal safety . . . *was [sic] based on a local Municipal custom, policy and*

*practice . . .* to effect the transfers of inmates.'").

## IV.    PLAINTIFF HAS STATED A CLAIM UNDER § 1983 FOR FAILURE TO TRAIN AND/OR SUPERVISE.

The Supreme Court has held that a municipality may be liable under § 1983 for failure to

train or supervise its employees when such failure constitutes a policy and represents deliberate

indifference.  *Harris*, 489 U.S. at 389-90.  "[I]t may happen that in light of the duties assigned to

specific officers or employees the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the

city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.

Plaintiff's failure to receive necessary bridge medications upon release from prison was a

fundamental dereliction of duty by the correctional officers charged with her care and was

readily avoidable through more or different training and/or supervision.  It was foreseeable that

this dereliction would have harmed Plaintiff and caused a violation of her constitutional rights.

Accordingly, Plaintiff's allegations are sufficient to state a § 1983 claim.

### A.    Plaintiff's Allegations Are Sufficient to State a Section 1983 Failure to Train and/or Supervise Claim.

The D.C. Circuit has held that post-*Leatherman*, a complaint "alleging municipal liability

under section 1983 for failure to train is to be judged not by the standards that would govern a

decision on the merits, but by the liberal standard of Rule 8."  *See Atchison*, 73 F.3d at 422.

The court held that plaintiff's complaint was sufficient because it gave "the defendants fair

notice of each claim and its basis."  *Id.*  Likewise, Ms. Rankin's allegations provide fair notice of

her failure to train claim and the basis for her claim.  She has alleged that the failure of

correctional officers in the R&D Unit to provide her with her prescribed medications upon

release manifests a failure to train and/or supervise on the part of the District, Defendants York

and Harrison and Defendant Doe(s).  Ms. Rankin has pled, for example:

> As a result of the inadequate training and supervision of the R&D
> Unit correctional officers, defendants failed to provide Ms. Rankin
> with her necessary prescription medications in violation of her
> Eighth Amendment right to be free from cruel and unusual
> punishment.  The failure to train and supervise the correctional
> officers staffing the R&D Unit to ensure that prisoners'
> constitutional rights are protected constitutes a policy or custom of
> deliberate indifference on the part of the District.[27]

Other courts have found allegations similar to Plaintiff's sufficient to withstand a motion

to dismiss.  *See, e.g.*, *Moore v. Sheahan*, No. 06 C 5443, 2007 U.S. Dist. LEXIS 12375, at *9

(N.D. Ill. Feb. 8, 2007) (plaintiff's allegation that defendant failed to provide adequate training,

which constituted deliberate indifference, was sufficient to survive a motion to dismiss); *Smith v.*

*Brevard County*, 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) (plaintiff's allegation of a

"'policy or practice of failing to train [employees] . . . to identify, monitor, or otherwise treat

inmates. . . who are known suicide risks'" was sufficient to withstand a motion to dismiss).

## B.    Additional Training of Correctional Officers Would Rectify the Type of Harm Experienced by Ms. Rankin.

Defendants' contention that "high-level medical training and supervision" would be

required of the correctional officers in the R&D Unit to rectify the circumstances caused by the

District's failure to train and/or supervise is nonsensical.[28]  Defendants contend, without citing

any legal authority, that to properly allege a failure to train and/or supervise claim, Plaintiff

"must plead and prove" that correctional officers must be trained, *inter alia*, to make medical

diagnoses and to recognize the distinction between prescriptions and which medications are

---

[27] Compl. ¶ 42; *see also* Compl. ¶ 43-46.  Because Plaintiff is unaware of the identity of Defendant Doe(s), he or she (or they) have not yet been served.

[28] *See* Defs.' Mem. 14-15.

prescribed for specific conditions.[29]  Defendants also contend that in order for this regime to

work, Plaintiff would be required to share with the correctional officers in the R&D Unit

confidential medical information, which would place the District in a constitutional "Catch-

22."[30]

      The District overstates – to an absurd degree – the training and supervision that would be

needed to protect the Eighth Amendment rights of discharged inmates to be provided bridge

medications.  The District has acknowledged a duty to provide such medications to inmates upon

release.  Physicians at the Correctional Treatment Facility ("CTF") prescribe such medications.

The correctional officers in the R&D Unit are responsible for providing inmates who have

prescriptions with their medications as they are processed for release.[31]  Defendants have failed

to train and/or supervise the correctional officers in the R&D Unit with respect to the proper

procedures and policies to follow in providing prescription medications to outgoing inmates.

The suggestion that they should independently have the ability to make medical diagnoses is

nonsense.

---

[29] Defs.' Mem. 15.

[30] *Id.*

[31] Compl. ¶ 41.

V.    **PLAINTIFF HAS STATED A CLAIM AGAINST DEFENDANTS YORK AND HARRISON[32] UNDER SECTION 1983 FOR VIOLATION OF HER EIGHTH AMENDMENT RIGHTS AND THE CLAIMS SHOULD STAND BECAUSE YORK AND HARRISON ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

A.    **Plaintiff's Allegations Against Defendants York and Harrison for Violation of Her Eighth Amendment Rights Are Sufficient to Survive the Motion to Dismiss.**

As discussed earlier, in order to state a claim under § 1983 against a prison official for violating an inmate's Eighth Amendment rights, a plaintiff must allege that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. *See Farmer,* 511 U.S. at 828; *Scott v. District of Columbia*, No. 98-01645 (HHK), 1999 U.S. Dist. LEXIS 21616, at *20-21 (D.D.C. Nov. 22, 1999). In addition, a plaintiff must allege that the official was "subjectively aware of the risk." *See Farmer*, 511 U.S. at 828. Ms. Rankin's allegations against Defendants York and Harrison are sufficient to state a claim.[33]

Plaintiff has alleged that Defendants, including York and Harrison, "knew that Ms. Rankin was very sick and had serious medical needs and that she faced a substantial risk of serious harm if she was not provided with the medications prescribed by her treating physician. Defendants acted with reckless disregard towards Ms. Rankin's serious medical needs when they

---

[32] Plaintiff has also alleged a violation of her Eighth Amendment rights by Defendants Doe(s) and Roe(s). These arguments apply equally to them. However, because Plaintiff does not yet know their identities, they have not been served.

[33] Defendants improperly rely on cases that predate *Farmer* for their arguments relating to the definition of deliberate difference. *See* Defs.' Mem. 12-14, 22-24. The Supreme Court stated in *Farmer*:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official has the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842.

ignored the instructions of her treating physician and failed to provide her with her necessary

medications upon release, despite her repeated requests."[34]  Plaintiff has also alleged that

Defendants York and Harrison are liable under § 1983 for violating Plaintiff's Eighth

Amendment rights by acting with deliberate indifference in failing to remedy "[t]he need for

more or different training and more supervision of the R&D Unit correctional officers."[35]

     **B.**     **Defendants York and Harrison Are Not Entitled to Qualified Immunity.**

Defendants York and Harrison contend that the claims against them should be dismissed

on qualified immunity grounds because there was no violation of "clearly established law."[36]

*Wakefield* and its progeny demonstrate otherwise.  They clearly establish that failure to provide

necessary bridge medications to discharged inmates is a violation of the Eighth Amendment,

though the D.C. Circuit has not yet addressed the precise issue.

Qualified immunity "'protects government officials . . . from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Moore v. Hartman*, 388 F.3d 871, 877 (D.C.

Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *rev'd on other grounds*, 547

U.S. 250 (2006)).  "Underlying this doctrine is the basic principle of fair notice: officials may be

held liable if '[t]he contours of the right [are] sufficiently clear that a reasonable official would

understand that what he is doing is violating that right.'"  *Id.* (quoting *Anderson v. Creighton*,

483 U.S. 635, 640 (1987)).

A court faced with a qualified immunity claim usually engages in a two-step inquiry: (1)

assuming the truth of plaintiff's allegations, a court must determine whether the plaintiff alleged

---

[34] Compl. ¶ 50.

[35] Compl. ¶ 44.

[36] Defs.' Mem. 23.

a violation of an actual constitutional right; (2) if plaintiff has alleged a violation of a constitutional right, then the court must determine whether the right was "clearly established" – that is, "'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *See Broudy v. Mather*, 366 F. Supp. 2d 3, 12 (D.D.C. 2005) (citations omitted). "While the right need not have arisen in identical or even 'fundamentally' or 'materially similar' circumstances, . . . the right can be considered clearly established only if the unlawfulness was 'apparent' in light of pre-existing law." *Moore,* 388 F.3d at 876 (quoting *Anderson*, 483 U.S. at 640). The law of other circuits may be relevant to the question of whether the law was "clearly established," "but only in the event that no cases of 'controlling authority' exist in the jurisdiction where the challenged action occurred." *Id*. at 885 (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Defendants York and Harrison are not entitled to qualified immunity because Plaintiff satisfies both prongs of the two-part inquiry. As discussed earlier, Ms. Rankin has clearly satisfied the first step of the inquiry – the allegation of an actual deprivation of a constitutional right.[37] With respect to the second step of the inquiry – whether the law was clearly established – there is no controlling authority in the D.C. Circuit, so the law of other circuits is relevant. *See Moore*, 388 F.3d at 885. The Ninth Circuit's decision in *Wakefield*, based on the Supreme Court's reasoning in *DeShaney* and *Estelle*, as well as cases that have followed *Wakefield*, such as *Lugo v. Senkowski*, 114 F Supp. 2d 111 (N.D.N.Y. 2000), clearly establish that failure to provide necessary transitional medications to newly released inmates who have no ability to obtain such medications "on their own behalf" violates the Eighth Amendment.

---

[37] *See supra* Part II.

The court in *Lugo* made this exact point in rejecting defendants' claim for qualified immunity: "Just as in *Wakefield,* Plaintiff was undergoing continuing treatment at the time he was released, was in need of medical aid in the period immediately following the release and was denied that aid." *Id*. at 115. The court held that in light of the facts alleged: "it cannot be argued that it was objectively reasonable for Defendants to believe that their conduct did not violate Plaintiff's rights." *Id.* at 116. *See Prewitt*, 160 Fed. Appx. 609, 611 (denying prison officials' motion for summary judgment based on qualified immunity because, citing *Wakefield* and *Estelle,* the prison officials had violated "clearly established" law when they disregarded doctors' prescriptions for plaintiff's pain medication and other doctors' orders in violation of plaintiff's Eighth Amendment rights).

## VI.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A § 1983 CAUSE OF ACTION BASED ON DEFENDANTS' VIOLATION OF HER EQUAL PROTECTION RIGHTS.

Ms. Rankin's final § 1983 cause of action rests on the Due Process Clause of the Fifth Amendment, which extends the application of the Equal Protection Clause of the Fourteenth Amendment to the District as well as the States. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). As with Plaintiff's other constitutional claims, it arises out of the refusal by the Defendants to provide Plaintiff with her necessary bridge medications. As was alleged in the Complaint and conceded by Defendants in their brief, the District has an official policy to provide "[a] seven day supply of medications . . . to all inmates released to home."[38] Plaintiff believes that this policy is followed with respect to other individuals who are not HIV-positive.[39] Plaintiff alleges that Defendants' failure to abide by the policy with respect to her constituted

---

[38] Compl. ¶ 15; *see* Defs.' Mem. 8.

[39] Compl. ¶ 55.

discrimination "on the basis of her physical illness and HIV-positive status." [40]  These

allegations are clearly sufficient to state a cause of action under the Equal Protection Clause.

The Equal Protection Clause "is essentially a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439

(1985); *accord Women Prisoners of the District of Columbia Dep't of Corrections v. District of

Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996).  A properly alleged claim on the basis of equal

protection has two basic elements: (1) a discriminatory act; and (2) indication of a discriminatory

motive.  *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *see, e.g.*, *Antonelli v. Sheahan*,

81 F.3d 1422, 1433 (7th Cir. 1996) ("Because Mr. Antonelli suggests that discriminatory

motives impelled discriminatory treatment of him, he has stated an equal protection claim.");

*Brandon v. District of Columbia Bd. of Parole*, 734 F.2d 56, 59-60 (D.C. Cir. 1984) (finding that

allegations of defendants' departure from customary policy in failing to re-parole plaintiff

without adequate explanation presented a cognizable equal protection claim).  Plaintiff's

allegations that she was denied bridge medications in a situation in which other individuals are

not and that the reason for the different treatment was her HIV-positive status is on all fours with

the requirements to survive a Rule 12(b)(6) motion.  If Ms. Rankin can prove what she alleges,

she will have made out a claim.

Defendants take a contrary view, but only by ignoring Plaintiff's allegations, or denying

them the liberal construction they deserve at this stage of the litigation.  Defendants state that the

Complaint lacks any facts that would allow this Court to infer that Plaintiff was the victim of

unequal treatment.[41]  In doing so, they overlook the allegations that Plaintiff was denied bridge

medications upon release from the D.C. Jail despite a policy to issue a seven-day supply of

---

[40] *Id.* ¶ 54.

[41] Defs.' Mem. 19.

medications to inmates upon their release and despite asking at least twice for such medications. As in *Brandon*, Plaintiff's allegations that the Defendants departed from an established policy without adequate explanation is sufficient to withstand a challenge on the pleadings. *See Brandon*, 734 F.2d at 60.

Defendants also argue that the Complaint is devoid of any facts that would allow this Court to infer that the denial of bridge medications was the result of discrimination. *Id.* This criticism is misplaced for reasons already explained. Notice pleading under the Federal Rules of Civil Procedure require only that a complaint contain "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." *Atchinson*, 73 F.3d at 421 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis in *Atchinson*); *see Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (stressing the "liberal requirements of notice pleading under Rule 8, particularly with regard to Equal Protection claims"); *see generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). Federal Rule of Civil Procedure 9(b) states in particular that "[m]alice, intent, knowledge, and other condition of mind," which would include discriminatory intent, "may be averred generally." *See Pryor v. NCAA*, 288 F.3d 548, 565 (3rd Cir. 2002) ("[I]ssues involving state of mind (e.g., intent) are often unsuitable for a Rule 12(b)(6) motion to dismiss. Indeed, of all the precedents cited, few have upheld the dismissal of a purposeful discrimination claim for failure to state a claim for relief."). Accordingly, plaintiff's allegations that she was discriminated on the basis of her HIV status and that individuals without HIV are treated more favorably in similar situations are sufficient to withstand a Rule 12(b)(6) challenge. *See, e.g.*, *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 582 (S.D.N.Y. 2006);

*Garcia v. Sanders*, No. 04-CV-60-HRW, 2005 WL 2010276 (E.D. Ky. Aug. 19, 2005); *Mark v. Olson*, No. 03-C-516-C, 2003 WL 23221515, at *9 (W.D. Wis. Oct. 21, 2003). Defendants' argument that Plaintiff has failed to state a claim bucks the clear weight of federal authority addressing what is required to plead an equal protection cause of action.[42]

Finally, Defendants argue that, according to her medical records, Plaintiff received consistent medical care during her incarceration. Assuming without conceding that Plaintiff received consistent care *from medical staff while incarcerated*, it is irrelevant as to Ms. Rankin's equal protection claim that she was denied bridge medications *by correctional officers upon her release*.[43]

## VII.   PLAINTIFF HAS SUFFICIENTLY PLEADED A CAUSE OF ACTION BASED ON DEFENDANTS' VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT.

Plaintiff's complaint makes out a prima facie case under Title II of the ADA, and Section 504 of the Rehab Act. Both pieces of legislation are designed to prohibit the denial or exclusion of individuals with a disability from public services or programs, *Ramirez v. District of Columbia*, No. 99-803 (TFH), 2000 U.S. Dist. LEXIS 4161, at *5 (D.D.C. Mar. 27, 2000), such as the one to provide each released inmate who requires continuing medications with a seven-day

---

[42] Significantly, Defendants do *not* argue that the discriminatory treatment of Plaintiff can be justified. It is the law in some circuits that a court determine, as part of its Rule 12(b)(6) analysis, "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002). Such justification, however, cannot be assumed: "a court ought not dismiss an equal protection claim on the basis of reasons unrevealed to the court. The state must come forward and identify the legitimate state interest being furthered." *Brandon v. Dist. of Columbia Bd. of Parole*, 734 F.2d 56, 60 (D.C. Cir. 1984). Defendants in this case have not come forward with any justification for denying Plaintiff her bridge medications. Accordingly, the Court should not entertain the issue in deciding their motion.

[43] Even farther afield from what is relevant to Plaintiff's equal protection claim is Defendants' discussion of medical care she received during a previous incarceration. *See* Defs.' Mem. 19. The Court should not consider this discussion.

supply of medications. Both are actionable based on Plaintiff's failure to receive bridge medications upon her release.[44]

In order to make out a claim under either the ADA or the Rehab Act, a plaintiff must: (1) have a disability which qualifies him or her for statutory protection, (2) be "otherwise qualified" for a public benefit, and (3) have been excluded or denied that benefit on the basis of his or her qualifying disability.[45] Without question, Ms. Rankin is entitled to protection from disability-based discrimination under both statutes by virtue of her HIV status. *See Bragdon v. Abbott*, 524 U.S. 624, 637-39 (1998). Moreover, because prisons and jails are public entities, any drug programs or services operating in these facilities are covered by both statutes.[46] Plaintiff alleges that Defendants' refusal to provide Plaintiff with bridge medications was due to her disability,[47] and Defendants do not appear to contest this point with respect to the instant claim.[48] Thus, the sole issue regarding Plaintiff's ADA and Rehab Act claim is whether Plaintiff was "otherwise qualified" to receive bridge medications in the first place. An examination of relevant case law reveals that Plaintiff satisfies this point too.

In *McNally v. Prison Health Services*, 46 F. Supp. 2d 49 (D. Me. 1999), McNally brought an action based on his denial of access to prescribed HIV medications while in jail. As a general matter, the jail responded to needs for medication within 24 hours of an inmate's entry. *Id.* at 58.

---

[44] *But see Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004), *vacated on other grounds*, 449 F.3d 1149 (11th Cir. 2006) (liability under the ADA and the Rehab Act "extend[] only to public entities and not to persons in their individual capacities").

[45] The Rehab Act requires plaintiffs to establish a fourth element that the program or service receives federal funding. The ADA by comparison contains no such restrictions on its applicability, which is the primary difference between the two. *Ramirez v. Dist. of Columbia*, No. 99-803 (TFH), 2000 U.S. Dist. LEXIS 4161, at *6 (D.D.C. Mar. 27, 2000). It is not the only difference between the Acts, but as a general matter courts aim to construe the ADA and Rehab Act to impose the same requirements. *See Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999).

[46] *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

[47] Compl. ¶ 60.

[48] Compl. ¶ 60.

In McNally's case, he went without any medication for the three days he spent in jail, though the defendants knew McNally's HIV status as well as the medications he was taking. *Id.* at 51. As here, McNally alleged that the defendants did not follow their general policies regarding administering medications when it came to inmates who were HIV-positive. *Id.* at 58-59. The district court concluded on this basis that McNally had raised a valid claim under the ADA. *Id.* at 59.

In reaching that result, the court rejected the argument that McNally's claim was inadequate as a matter of law because it took issue with "the medical treatment received for a disability," as opposed to the denial of "access to services or programs because he is disabled." *Id.* at 58. The court considered that argument off-base: "Plaintiff has contended the Cumberland County Jail discriminated against plaintiff because of his HIV positive status, not by providing him with inadequate care, but by denying him with immediate access to prescribed medications, a service provided to detainees in need of prescriptions for other illnesses." *Id.* In other words, McNally was "otherwise qualified" for access to prescribed medications and was denied it on the basis of his particular need constituting a qualified disability.

The same is true here. Plaintiff was "otherwise qualified" to receive bridge medications and was denied them on the basis of her HIV status. Discrimination is the basis of Plaintiff's ADA and Rehab Act claims, not inadequate medical care, as was the case in each of the decisions relied on by Defendants. *See Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (rejecting ADA/ Rehab Act claim arising out of alleged medical negligence); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 121 (7th Cir. 1997) (same); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (same).

## VIII.  PLAINTIFF'S CLAIMS AGAINST THE DISTRICT ARE NOT BASED ON THE THEORY OF RESPONDEAT SUPERIOR.

Defendants remind this Court that a plaintiff cannot establish §1983 liability against a municipality based on the theory of respondeat superior.[49]  Plaintiff does not disagree.  Plaintiff vigorously disagrees, however, with the suggestion that this point of hornbook law disposes of any of the claims in this case.  In a telling signal that their suggestion is without basis, Defendants make no effort to explain how Plaintiff's §1983 claims against the District are predicated on the theory of respondeat superior.  In fact, they are not.

The District, as a municipality, may be held liable under §1983 "only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." *Ashford*, 306 F. Supp. 2d at 12 (quoting *Morgan v. District of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987)); *see Monell*, 436 U.S. 658 (1978).  It is the policy or custom component of plaintiff's burden in a § 1983 action which ensures that a municipality is held liable only for constitutional violations of its own making, and not for violations caused by its employees or agents.  *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985).  Both a policy and a custom are "a deliberate choice" made on the part of the municipality.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). In the case of a policy, that deliberate choice is reflected in "decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality to follow a course of action."  *Brown*, 520 U.S. at 404.  In the case of a custom, it is reflected in "practice . . . so widespread as to have the force of law."  *Id.*  Either way, municipal liability under §1983 is appropriate when either a policy or custom precipitated a constitutional violation

---

[49] Defs.' Mem.  25.

because it means that the municipality itself was "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694.

Ms. Rankin's § 1983 causes of action against the District each contain allegations that the District's policies or customs constituted or directly caused the violations of Plaintiff's constitutional rights. Plaintiff's first cause of action alleges that the policy or custom of denying bridge medications constituted deliberate indifference to Plaintiff's serious medical needs in violation of her Eighth Amendment rights.[50] *See Estelle*, 429 U.S. at 104. Plaintiff's second cause of action alleges that the District has evinced deliberate indifference to the rights of released inmates by failing to train correctional officers at the R&D Unit, which constituted a policy or custom that caused the violation of Plaintiff's Eighth Amendment rights.[51] *See Harris*, 489 U.S. at 389. Finally, her fourth cause of action alleges a discriminatory policy or custom of denying bridge medications on the basis of HIV-positive status in violation of Plaintiff's Fifth Amendment rights.[52] *See Sawyer v. Sigler*, 320 F. Supp. 690, 698-99 (D.Neb. 1970). None of these claims against the District is based on the theory of respondeat superior or vicarious liability.

**IX. DEFENDANTS' ARGUMENT THAT THEY CANNOT BE HELD LIABLE FOR THE CONDUCT OF AN INDEPENDENT CONTRACTOR IS WITHOUT MERIT.**

Next, Defendants argue that any duty on the part of the District to provide inmates with necessary bridge medications "was properly delegated to an independent contractor [CHHPS]" and "the District cannot be held liable for allegedly negligent acts" which the independent

---

[50] Compl. ¶ 36.

[51] *Id.* ¶ 42.

[52] *Id.* ¶ 54.

contractor performed.[53]  This argument is based on the false premise that Plaintiffs' claims arise out of the conduct of CHHPS medical staff.  It also misconstrues the law regarding Defendants' potential liability based on such conduct.

Plaintiff's claims, as a general matter, are not based on the conduct of CHHPS medical staff.  Rather, Plaintiff's claims address the conduct of, as well as policies and customs governing, the correctional officers who staff R&D and who refused to give Plaintiff her bridge medications upon release.  Accordingly, the conduct of CHHPS medical staff – negligent or otherwise – is beside the point at least for purposes of deciding whether Plaintiff has stated claims upon which relief can be granted.

Even assuming that the conduct of CHHPS medical staff is somehow relevant to Plaintiff's ability to assert claims upon which relief can be granted, Defendants' argument remains flawed.  Defendants are wrong to assert that they cannot be liable for acts performed by an independent contractor.  It is well settled that the District cannot abdicate its constitutional responsibilities to inmates:  "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."  *West v. Atkins*, 487 U.S. 42, 56 (1988) (footnote omitted); *see Canell v. Bradshaw*, 840 F. Supp. 1382, 1388 (D. Or. 1993) (listing cases in agreement).  The use of an independent contractor also fails to shield Defendants from liability under the ADA and the Rehab Act.  These acts create affirmative duties on the part of prisons to reasonably accommodate inmates with qualified disabilities and to operate services or programs free from disability-based discrimination.  *See Miller v. King*, 384 F.3d 1248, 1276 n.33 (11th Cir. 2004) ("Title II [of the ADA] . . . places

---

[53] Defs.' Mem. 27.

upon the state prisons the onus of justifying any exclusion of a qualified, disabled prisoner from its services, programs, or activities.").  There is no justification to relieve Defendants of these duties where an independent contractor administers the program or service.  Defendants, for their part, are silent on the issue.  Thus, Plaintiff's claims against Defendants, with the exception of her claim for negligence, are unaffected by the District's use of an independent contractor.

Defendants' argument to the contrary relies exclusively on *Herbert v. District of Columbia*, 716 A.2d 196 (D.C. 1998), which supports Plaintiff's view.  *Herbert* stands for the limited proposition that "the District cannot be held liable [for negligence] without proof of negligence on the part of its officials or employees." *Id.* at 201.  The decision does not touch on any of Plaintiff's non-negligence claims except to make clear that the District's constitutional obligations "may not be avoided by delegation to an independent contractor." *Id.* at 200. Indeed, Plaintiff's negligence claim survives the holding in *Herbert* because the claim *does* allege negligence on the part of District officials and employees.

## X.    PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE PROPERLY BEFORE THIS COURT ON THE BASIS OF SUPPLEMENTAL JURISDICTION.

Finally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's negligence and negligent supervision claims.[54]  The sole basis offered by Defendants for their contention, however, is precedent favoring the dismissal of pendent state law claims *after* a court dismisses all federal claims affording subject matter jurisdiction.[55]  *See Gaubert v. Gray*, 747 F. Supp. 40, 50 (D.C. Cir. 1990).  Defendants cite no authority for the suggestion that the Court may, at this point in the proceedings, summarily dismiss the related state law claims without having first rendered a decision on the federal causes

---

[54] Defs.' Mem. 27-28.

[55] *Id.* 28.

of action.  *See* 28 U.S.C. § 1367(a) (the district courts "shall have supplemental jurisdiction over all other [related] claims").

Finally, in light of Defendants' failure to make anything but jurisdictional arguments with respect to Plaintiff's state law negligence claims, the Court's consideration of these claims on their merits is undisputed.

## XI.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD ALSO BE DENIED.

### A.     Unauthenticated Documents Used by Defendants in Support of Their Motion for Summary Judgment Should be Stricken.

Neither the "Jail Records" nor the "Medical Records" that Defendants submitted in support of their Motion for Summary Judgment were authenticated as required by Fed. R. Civ. P. 56(e).  Rule 56 requires that documents "must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person whom the exhibits could be admitted into evidence."  10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2722, at 382-86 (3d ed. 1998); *see Carey Canada, Inc. v. California Union Ins. Co*., 748 F. Supp. 8, 13 (D.D.C. 1990) (granting motion to strike memorandum that was "neither attached to an affidavit nor certified, as required by Rule 56(e)").  Accordingly, the "Medical Records," which were filed under seal,[56] and the "Jail Records" should be stricken and not considered by the Court in resolving Defendants' Motion.

Moreover, because Defendants cite to "Medical Records" and "Jail Records" for Paragraphs 1-13, 16-18 of their "Statement of Material Facts as to which There is No Genuine Issue,"[57] those paragraphs should be stricken from Defendants' Statement.  If the "Jail Records"

---

[56] In their Motion to File Plaintiff's Medical Records under Seal, the Defendants state that they "intend to append [such records] as an exhibit to their dispositive motion."  Dkt. #5, filed February 8, 2007.  Defendants did not submit an affidavit or otherwise certify the medical records they filed under seal.

[57] *See* Dkt. #7, filed February 8, 2007.

and "Medical Records" are not considered, then no matters outside of the pleadings remain before the Court, and the Court should resolve Defendants' pending motion as a motion to dismiss pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b).

### B.    Defendants' Motion for Summary Judgment Should Be Denied Under Rule 56(f) As Premature Because No Discovery Has Occurred.

"Summary judgment is appropriate only after plaintiff has had a full opportunity to conduct discovery."  *See First Chi. Int'l v. United Exch. Co*., 836 F.2d 1375, 1381 (D.C. Cir. 1988); *see also Banks v. Veneman*, 402 F. Supp. 2d 43, 48 (D.D.C. 2005) (denial of summary judgment appropriate under Rule 56(f) when "the record is undeveloped" on elements of a plaintiff's claims). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery."  *Dickens v. Whole Foods Mkt. Group, Inc*., No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. March 18, 2003).

Discovery has not begun in this case.  The parties have not held a Rule 26(f) conference; nor has the Court issued a Rule 16(b) scheduling order.  Given the necessity of discovery in order for Plaintiff to be able to oppose Defendants' motion for summary judgment, *see* Fed. R. Civ. P. 56(f),  Defendants' motion should be denied.  Plaintiff has attached as part of her opposition to Defendants' motion the Rule 56(f) Affidavit of Philip Fornaci detailing the discovery that is needed in order for Plaintiff to oppose Defendants' motion for summary judgment.[58]

---

[58] Because Plaintiff has not yet obtained discovery from Defendants, she is not able to submit a statement of genuine issues, "which shall include references to the parts of the record relied upon to support the statement." LCvR 56.1.

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment should be denied.


Dated: March 9, 2007                          Respectfully submitted,


                                              /s/ Robert N. Eccles_____
                                              Robert N. Eccles (D.C. Bar No. 355479)
                                              Andrea J. Worden (D.C. Bar No. 463085)
                                              O'Melveny & Myers, LLP
                                              1625 Eye Street, NW
                                              Washington, D.C.  20006-4001
                                              Phone:  (202) 383-5300
                                              Fax:  (202) 383-5414

                                              Philip Fornaci (D.C. Bar No. 434824)
                                              Ivy Lange (D.C. Bar No. 488147)
                                              Washington Lawyers' Committee for Civil Rights
                                              11 Dupont Circle, N.W., Suite 400
                                              Washington, D.C. 20036
                                              Phone:  (202) 319-1000

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th Day of March 2007, true copies of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Or, In the Alternative, For Summary Judgment, Fed. R. Civ. P. 56(f) Affidavit, and Proposed Order, were filed electronically with the Court for ECF service upon:

Linda Singer
Acting Attorney General for the District of Columbia

George C. Valentine
Deputy Attorney General, Civil Litigation Division

Ellen A. Efros
Chief, Equity I

Denise J. Baker
Assistant Attorney General

441 Fourth Street, NW, Suite 6S079
Washington, DC 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

/s/ Robert N. Eccles
Robert N. Eccles

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TROY (aka TREYSHAWN) RANKIN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-02063  (RMC) |
| | ) |
| DISTRICT OF COLUMBIA, *et al*., | ) |
| Defendants. | ) |
| | ) |

**[PROPOSED] ORDER**

The Court, after considering Defendants' Motion to Dismiss the Complaint, or in the Alternative, to Grant Summary Judgment in Their Favor and the memorandum of points and authorities filed in support thereof, Plaintiff's Opposition, the memorandum of points and authorities filed in support thereof, and the accompanying Rule 56(f) affidavit of Philip Fornaci, and the entire record therein, hereby **ORDERS** that Defendants' Motion to Dismiss the Complaint, or in the Alternative, to Grant Summary Judgment in Their Favor is **DENIED**.

IT IS SO **ORDERED** on this _____ day of _____, 2007.

_____
U.S. DISTRICT JUDGE

cc:

Robert N. Eccles (D.C. Bar No. 355479)
Andrea J. Worden (D.C. Bar No. 463085)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300 (telephone)
(202) 383-5414 (fax)

Philip Fornaci (D.C. Bar No. 434824)

Ivy Lange (D.C. Bar No. 488147)
Washington Lawyers' Committee for Civil Rights
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
(202) 319-1000 (telephone)

Linda Singer
Acting Attorney General for the District of Columbia

George C. Valentine
Deputy Attorney General, Civil Litigation Division

Ellen A. Efros
Chief, Equity I

Denise J. Baker
Assistant Attorney General

441 Fourth Street, NW, Suite 6S079
Washington, DC 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY (aka TREYSHAWN) RANKIN,

        Plaintiff,

      v.

DISTRICT OF COLUMBIA, et al.,

        Defendants.

Civil Action No. 06-02063 [RMC]

## RULE 56(f) AFFIDAVIT OF PHILIP FORNACI

I, Philip Fornaci, do hereby declare and affirm as follows:

1.     I am the Director of the D.C. Prisoners' Project, Washington Lawyers' Committee for Civil Rights & Urban Affairs.  From August 2003 until October 2006, I was the Executive Director of the D.C. Prisoner Legal Services Project, Inc.  I am co-counsel for Plaintiff Treyshawn Rankin in *Rankin v. District of Columbia*, et al., No. 06-02063(RMC).  I have personal knowledge of the factual matters contained herein.

2.     Ms. Rankin brought this action under 42 U.S.C. § 1983 against Defendants for failing to provide her with necessary prescription medications upon her release from the D.C. Jail, in violation of the Eighth and Fifth Amendments of the Constitution, and the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  Ms. Rankin has also asserted negligence claims against Defendants.

3.     Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, on February 8, 2007.  In their memorandum, Defendants contend,

*inter alia*, that the failure to provide Ms. Rankin with her seven-day supply of transitional

medications was a "single incident of failure" that does not rise to a constitutional

violation, and was not Defendants' fault (Defs.' Mem. 4, 8);  that the individual

Defendants did not violate Ms. Rankin's constitutional rights and that there was no

District custom or practice that caused the violation of her rights (*Id*. 10);  in addition,

they raised an issue regarding the obviousness of the need for additional training of R&D

Unit correctional officers (*Id*. 14), as well as the requisite knowledge of Defendants York

and Harrison (*Id*. 12-13, 22-24.)

4.      Because there has been no discovery yet in this case, Plaintiff is unable to

present by affidavit the facts essential to oppose Defendant' Motion for Summary

Judgment.  Plaintiff requires discovery in order to oppose the claims made by

Defendants.  That discovery, which would identify the full extent and nature of the

violations of Plaintiff's constitutional and statutory rights,[1] would include, among other

things, the following:

a.      the identities of the correctional officers (Richard Roe(s)) on duty at the Receiving & Discharge Unit ("R&D Unit") on December 2, 2005;

b.      the identities of the supervisors (John Doe(s)) responsible for the R&D Unit during the time period that includes December 2, 2005;

c.      post orders for the R&D Unit on December 2, 2005;

d.      reports of other individuals released from the Central Detention Facility who did not receive their prescribed medications upon release, and information about the type of medications they were denied;

e.      policies and procedures regarding communications from the

---

[1] Because Defendants did not address the substance of Plaintiff's negligence claims, but instead argued that the Court should dismiss them for lack of subject matter jurisdiction, Plaintiff does not specifically address discovery needed to oppose those claims.

Records Office to the R&D Unit and elsewhere about inmates that have been cleared for release;

      f.     reports or logs or other documentation of phone calls and/or visits from released inmates inquiring about the seven-day supply of medications they did not receive upon discharge;

      g.     policies, procedures and training materials relating to the process of releasing inmates from the R&D Unit, including distribution of seven-day supply of medications;

      h.     Department of Corrections orders relating to distribution of seven-day supply of medications to released inmates;

      i.     correspondence, memoranda, emails, and other documents relating to the inclusion of the provision in the CCHPS contract regarding the seven-day supply of medications to released inmates

      j.     documents concerning communications protocol and procedures between the Central Treatment Facility (CTF), CCHPS and the R&D Unit;

      k.     diagrams or blueprints of the physical layout of the R&D Unit;

      l.     documents relating to security procedures relating to the release of inmates from the R&D Unit;

      m.     handbooks and other documents relating to the training of correctional officers who serve in the R&D Unit regarding, among other things, medication distribution;

      n.     policies and protocols relating to procedures to handle requests by inmates for prescription medications at the R&D Unit upon their release;

      o.     protocol and training materials relating to the interactions between the correctional officers in the R&D Unit and the pharmacy, in particular with respect to prescriptions for inmates who are about to be released;

      p.     policies and procedures regarding protocols and responsibilities of supervisors of the R&D Unit;

      q.     internal meeting notes, minutes, emails relating to policies, practices and problems with medication distribution to inmates upon release;

      r.     protocols and training materials regarding the transfer of inmates from CTF to the Central Detention Facility;

3

s.      records indicating rates at which prescribed medications are not distributed to discharged inmates and what types of medications those are;

t.      records regarding cost and payment information for HIV medications;

u.      complaint records pertaining to correctional officers in the R&D Unit and actions taken in response;

v.      studies, audits, reports, reviews relating to the operation of the R&D Unit, including medication distribution;

w.      memoranda, meeting minutes, notes, emails, or other documents that relate to the distribution of medication, including HIV medications, to inmates upon release;

x.      depositions of Defendants York and Harrison regarding, among other things, supervisory and training practices as well as protocols with respect to the process of releasing inmates from the R&D Unit at the D.C. Jail, including distribution of medication; the extent and nature of their awareness of problems with respect to distribution of medication to outgoing prisoners, which includes Ms. Rankin, and risk of harm if medications not provided; knowledge relating to duties and standards in provision of adequate medical care, including distribution of medications;

y.      depositions of Defendants Doe(s) and Roe(s), once they are served, regarding many of the same issues as Defendants York and Harrison, and specific events regarding the release of Ms. Rankin on December 2, 2005;

z.      Correctional Treatment Facility (CTF) and Central Detention Facility unit logs and movement logs for December 2, 2005 describing movement from CTF to Central Detention Facility, or release from Central Detention Facility;

aa.     CRYSTAL or other computer database reports for individuals discharged from the Central Detention Facility on December 2, 2005;

4

        bb.    contracts, memoranda of understanding or other agreements between the Department of Corrections and CCHPS regarding policies, procedures and protocols for distribution of 7-day supply of medications upon discharge.

Further affiant sayeth naught.

Philip Fornaci

Dated: March 9, 2007

Subscribed and sworn to before me, a notary public, this 9th Day of March, 2007.

Notary Public

My Commission expires:

VIRGINIA I. FORT
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires November 14, 2010

5