**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TROY (aka TREYSHAWN) RANKIN

Plaintiffs,

v.

DISTRICT OF COLUMBIA, *et al*.,

Defendants.

Civil Action No. 06-02063 (RCM)

**DISTRICT DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN FAVOR OF DISTRICT DEFENDANTS**

## I. INTRODUCTION

Even though Plaintiff crafts her complaint by copying every conceivable allegation in the pleading formbook, she does not, presumptively, avoid a motion to dismiss for failure to state a claim. Bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). Plaintiff's allegations are conclusory, without any supporting facts other than the alleged misconduct of line-correctional officers who did not tender to her the medications. Notice pleading under the Federal Rules of Civil Procedure, however, should not be construed as resting on a sheer scintilla of copied text, without more, given the expense and hardship on the Defendants in a fee shifting suit. While the claims asserted contain all the buzzwords related to constitutional wrongs, such as "deliberate indifference", negligent training and supervision, "policy and practice," and §1983, when boiled down to its essence this lawsuit, at best, is no more than negligence claims for damages which do not rise to the level of constitutional violations.

Plaintiff frames this action as arising from a **refusal** to provide medical treatment while confined or constrained by the government. **Refusal** is to be inferred from the allegation that Plaintiff asked for her medication upon release from jail and the absence of the medication after she was released. Such a subjective inference belies other reasonable bases for her lack of receipt of medication—reasonable bases that do not bring the full weight of the U.S. Constitution down upon the District Defendants.

## II. ARGUMENT

### A. Plaintiff's Factual Allegations Differ Significantly from the Facts Supporting Relief in *Wakefield v. Thompson*

Plaintiff spends several pages of her prolix 35-page opposition to factually analogizing her Eighth Amendment claim to that of the plaintiff in *Wakefield v Thompson*, 177 F. 3d 1160. The analogy goes so far as to claim that "[t]he allegations in this case mirror those in *Wakefield*."[1] Nothing could be farther from the truth.

In truth, Wakefield was a parolee during the period that he did not receive medications; thus, he was still under the jurisdiction of the government. *See Wakefield v. Thompson*, No. C 95-0137 FMS, 1996 WL 241783, at *1-2 (N.D. Cal. April 30, 1996). Wakefield was subject to the terms of his parole agreement, which governed his freedom to come and go as he pleased. His parole agreement required that he take these medications. His freedom not to take these medications was controlled by the government. As such, Wakefield's personal liberty was restrained, and he argued that personal restraint formed the basis for the continued applicability of the Eighth Amendment prohibition against cruel and unusual punishment. *Id*, at *4.

Here, unlike the situation in *Wakefield*, Plaintiff was freed without the constraints of either parole or probation. *See Attachment 1* (Jail Release Records—Offense Disposition "Time

[1] Plaintiff's Mem. Opp. Pages 9-12.

Served or Suspended"). Plaintiff's liberty was not constrained. She suffered no personal restraint of freedom that precluded obtaining her medications. The District Defendants did not further restrain Plaintiff in any way once she was outside the cellblock doors. At the time of Plaintiff's release, she was not suffering from a "deprivation of liberty" that precluded her form obtaining medical care since she was not on probation or parole enforceable by the District Defendants.

The situation presented in *Wakefield* and the instant case differs greatly in another material aspect: Wakefield was required to be medicated on psycho-tropic drugs as a condition of his parole.[2] These psycho-tropic drugs purported to prevent outbursts of violence.[3] As such, the government still had restraints upon his absolute freedom and personal liberty. By comparison, Plaintiff had no such strictures on her personal liberty. She was free to walk to the nearest emergency ward, hospital, medical clinic, HIV-AIDS center or free clinic to obtain emergency medications. In fact, she was free to contact her Center for Correctional Health and Policy Studies, Inc. (CCHPS) treating physician the very next day after her release to complain that she was released from jail without her prescribed medications. This she did not do.

**B. There is No Constitutional Right to Transitional Medication**

The Ninth Circuit has gone down the slippery slope of requiring the government, under certain circumstances, to provide medications to exiting prisoners to tide them over until they see a doctor. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). *Wakefield* stands for this proposition because the ex-convict was still under the jurisdiction and control of the government by virtue of his parole status. The other cases cited by Plaintiff are in accord. *See Lugo v. Senkowski*, 114 F. Supp. 2d 111 (N.D.N.Y.) (Plaintiff was a parolee, similar to *Wakefield*, at the

---

[2] *See Wakefield v. Thompson*, No. C 95-0137 FMS, 1996 WL 241783, at *1-2 (N.D. Cal. April 30, 1996).

[3] In fact, in the absence of these psycho-tropic drugs, Wakefield later committed a brutal murder while on parole.

time the government barred him from receiving medical treatment); *Prewitt v. Roos,* 160 Fed. Appx. 609, 610-11 (the 9th Circuit followed its own precedent to find that the government should tender medications to an inmate currently in custody.); *Haltiwanger v. Mobley*, No. 00-1466, 2000 U.S. App LEXIS 23717, *2-3 (8th Cir. September 25, 2000) (in custody plaintiff entitled to medications); and, *Mizques v. Hoover*, No. CV-04-76-GF-CSO, 2006 WL 2506049, *4, *6 (D. Mont. Aug. 28, 2006) (in custody inmate entitled to medical transportation prescribed by treating physician).

All of these cases were cited for support by Plaintiff. In all of these cases, however, plaintiffs continued to be under the control of the government and without liberty to act on their own behalf. District Defendants submit that this Court should recognize that to expand the limited holdings of these cases to the present situation is a slippery slope, fraught with danger for the government fisc and court doctrine by enlarging the commodious contours of the Eighth Amendment.

As opposed to reliance on the Ninth Circuit decisional law, as Plaintiff would have this Court do, the District Defendants draw the Court's attention to and more appropriate reliance to the case of *DeShaney v. Winnebago County DSS*, 489 U.S. 189 (1989). In *DeShaney*, the U.S. Supreme Court stated: "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help [her], but from the limitation which it has imposed on [her] freedom to act on [her] own behalf." *Id.* at 200. Here, the District Defendants had not impaired Plaintiff's ability to obtain her medications by virtue of a restraint on her liberty or as a condition of her release. *Cf. Wakefield*, No. C 95-0137 FMS, 1996 WL 241783, at *1-2 (N.D. Cal. April 30, 1996). Thus, the factual underpinnings and

applicable legal reasoning in *Wakefield* and Rankin do not "mirror" themselves, as alleged in Plaintiff's Opposition.

**C. Plaintiff Has Not Stated a Predicate Eighth Amendment Violation**

There is no constitutional or federal guarantee safeguarding a prisoner's right to transitional medications upon release from jail absent some continued restriction on the liberty of the released ex-offender. No District of Columbia statute or regulation requires the District Defendants to provide medications or other medical care after an inmate's release. Certainly, the District Defendants provided the full panoply of medications and medical treatment as soon as the Plaintiff shared her HIV-positive status with them, which was not until several days after she was incarcerated. *See*, Attachments 2 and 3, Certifications of Authenticity of Rankin's Institution Jail and Medical Records, respectively.[4]

Notwithstanding Plaintiff's apparent suggestion to the contrary, District of Columbia political committee hearing discussions, without a resulting regulation, do not provide the basis for a legal standard. (*Cf.* Complaint at ¶¶ 18-19). No federal funding statute or regulation ties the receipt of Department of Correction funds to provision of transitional medications when a prisoner is released from incarceration or results in a basis for the constitutional standard decried by this Plaintiff.

Without benefit of statute or regulation to buttress her constitutional claim, Plaintiff lowers the bar and alleges that the District Defendants' "duty is reflected in the Standards for Health Care in Correctional Institutions issued by the American Public Health Task Force on Correctional Health Care Standards." (Complaint at ¶ 14). Plaintiff relies upon this obscure publication that sets forth, at most, "best practices" to provide bridge medications to ease the

[4] The "Jail Records" are attached to the District Defendants' Motion to Dismiss and Summary Judgment Motion as Exhibit "A," and to this Reply Brief as Attachment 1. The Medical Records are attached to the District Defendants' Motion to Dismiss and summary Judgment Motion as Exhibit "B."

transition to the outside world for released prisoners. Such a statement of "best practices" however, does not rise to the level of a constitutional standard against which damages should inure to the detriment of the District Defendants. This may be the legal standard that Plaintiff hopes that this District Court and this Circuit will apply; but, as yet, it is only the Ninth Circuit that gives to ex-convicts the same exit benefits, which ex-servicemen and women receive after they fight in wars for this country—that is, continuing medical care after release or discharge. Neither the framers of the Constitution nor the U.S. Congress would assume this broad extension of rights to ex-convicts.

### D. Plaintiff Fails to Properly Allege a Violation of a Policy, Custom or Practice that Creates Liability against the District of Columbia under 42 U.S.C. §1983

Plaintiff's allegations that the District of Columbia violated her due process rights fail, if for no other reason than she fails to allege that other inmates released before her, frequently and as a matter of practice, failed to receive transitional medications, thus putting the District Defendants on notice of said violations of policy or custom.[5] To prevail on a §1983 claim against the District of Columbia, plaintiff must show that the deprivation of her constitutional rights was caused by a policy, custom or practice of the District of Columbia, or that a single "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 412 (1997).

The Supreme Court in *Monell*[6] established the rule that, "local governing bodies . . . can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief (only) where

---

[5] 42 U.S.C. Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, action, or usage of . . . the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

[6] *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).

. . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Monell*, 436 U.S. at 690. In determining whether a government entity may be held liable under 42 U.S.C. §1983, that liability may not be proven under the *respondeat superior* doctrine, but rather must be founded upon evidence that the government unit itself supported a violation of constitutional rights. *Jett v. Dallas Independent School District*, 109 S.Ct. 2702, 2773 (1989); *Oklahoma City v. Tuttle*, 471 U.S. 807 (1985; and *Monell* 436 U.S. at 691-5. *Accord Miller v. Barry*, 698 F. 2d 1259, 1261 (D.C. Cir. 1983) (Official policy must be the moving force to establish liability); and *Tarpley v. Greene*, 684 F. 2d 1 (D.C. Cir. 1982). In other words, to succeed on a §1983 claim against a municipality "a plaintiff must show a course deliberately pursued by the city, as opposed to an action taken unilaterally by a municipal employee, *and* an affirmative link between the [city's] policy and the particular constitutional violation alleged (citations omitted)." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).

Plaintiff has not, and cannot, identify any official policy or practice of the District Defendants that the District has routinely failed to enforce. In place of a legally cognizable official policy or practice, Plaintiff draws this Court's attention to several red herrings. First, Plaintiff points to a "duty" scribed in an obscure task force's publication, which is only found in the public domain at a cost and diligent search.[7] (Complaint at ¶ 14). Plaintiff makes no

---

[7] Plaintiff alleges that the Standards for Health Care in Correctional Institutions, issued by the American Public Health Association Task Force on Correctional Health Care Standards sets a minimum two week supply of bridge medications as a constitutional standard or accepted policy, custom or practice. The Internet website supports the Defendants' proposition that the standards are merely advisory. It advertises the book by stating:

> Standards for Health Services in Correctional Institutions, 3rd edition **provides a model** for quality prison health care based on fundamental principles in public health and legal guidelines set forth in the U.S. Constitution, international treaties and court rulings.

allegation that DOC ascribes or subscribes to the "statement" set forth in the publication or the publication itself. Similarly, Plaintiff makes no allegation that the "task force" "statement" has been accepted as expert evidence on the topic of transitional medications or whether the federal or local prisons/jails uphold the statement set forth therein as a "national standard."

Secondly, Plaintiff infers that a discussion during a D.C. Council Committee hearing is sufficient to set policy standards for this alleged constitutional wrong (*Id*. at ¶¶ 14-16). However, mere reference to the conditions faced by prisoners with respect to medical care and services should not, without more, form the basis for a constitutional violation.

Third, Plaintiff attempts to lean upon contractual language between the District and its medical contractor to sustain her constitutional claim. (*Id.* at ¶ 16). The contract agreement provides that seven (7) days of bridge medications should be provided; however, a mere contractual agreement with a third-party vendor does not state sufficient policy against which a constitutional violation will lie.

Municipal liability must be established by proof of a "persistent, pervasive practice, attributable to a course deliberately pursued by official policy makers, one that caused the deprivation of constitutional rights plaintiffs experienced." *Carter*, 795 F.2d at 125. It is plaintiff's burden to show a persistent, pervasive practice of city officials which, if not officially adopted, was so common and settled as to be considered a custom or policy, *Id.* at 125. A 2006 Policy for Pharmacy Services provides that an inmate will be provided with a seven day supply of medications upon release. District Defendant's singular inability to get the medications to Plaintiff in time for her release, however, does not create a constitutional violation of the policy. Plaintiff fails to plead that prior released prisoners failed to receive bridge medications upon

---

(Emphasis added). *American Public Health Association.* Published by the American Public Health Association, 2003, 182 pp., ISBN 0-87553-029-X, cost is $37.95.
http://www.apha.org/about/news/booksreleases/books4162003.htm

release as a matter of policy, custom, or practice. In fact, the District's contract with its medical contractor would suggest the contrary--that is, as a matter of custom, policy, and practice, such medications are supplied. Thus, unable to make the requisite allegation, Plaintiff cannot prove a "persistent, pervasive practice of city officials" in violation of §1983.

**E. Plaintiff Fails to State a Claim for Supervisory Liability**

Plaintiff's assertion of her claim for supervisory liability against individual District Defendants, Harrison and York, under 42 U.S.C. §1983, requires proof that: (1) the supervisor was responsible for supervising the wrongdoer; (2) that a duty to instruct the subordinate to prevent the constitutional harm arose from the surrounding circumstances; and (3) that, as a result of the official's failure to instruct, plaintiff was harmed in the manner threatened. *Haynesworth v. Miller,* 820 F.2d 1245, 1262 (D.C. Cir. 1987). As previously stated, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). Plaintiff's sole allegation is that the correctional officer(s) failed to give Plaintiff her medications upon request as she was she exiting confinement. There are no alleged facts to support the claim that the supervisory defendants participated, directed, acquiesced, or failed to intervene in an effort to retrieve the medications.

Indeed, supervisory defendants have submitted declarations attesting to the fact that they had no knowledge of Plaintiff's need for medication; had no knowledge of her medical history; were not present at the time that she was released; were not involved in the release process; had no personal animus against Plaintiff; and, had no written or informal policies that would preclude medical care or prescription medications to Plaintiff, among other things. *See Attachments 4 and 5*, respectively (Declaration of Dennis Harrison at ¶¶ 3-7; Declaration of S. Elwood York at ¶¶ 3-7).

Nor does Plaintiff provide any supporting facts asserting how the supervisory defendants had a duty to instruct their subordinates how to distribute medications or whether it was the duty of the releasing correctional officers to distribute the medications. Moreover, since the supervisory Defendants did not witness or have knowledge of the alleged events, none were in a position to instruct the subordinate officers allegedly involved in the failure to tender the medication to do so or refrain from doing so. Furthermore, it is well established that there can be no vicarious liability imposed on supervisors for the unconstitutional acts of their subordinates. *Monell* 436 U.S. at 694 n.58. Thus, plaintiffs have failed to state a viable claim for supervisory liability.

**F. Defendants Harrison and York Are Entitled to the Protections of Qualified Immunity**

In addition to defeating any claim for supervisory liability, these supervisory defendants are entitled to the protection of qualified immunity. The doctrine of qualified immunity was defined by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) as one which shields government officials "discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Since Harlow was decided, the Supreme Court further expanded the qualified immunity standard in *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The Court stated:

> Unless the plaintiff's allegations state a claim of violation of *clearly established law*, a defendant pleading qualified immunity is entitled to dismissal *before* the commencement of discovery.

*Id*. at 536. (emphasis supplied). *See also Hunter v. District of Columbia*, 943 F.2d 69 (D.C. Cir. 1991). "A court evaluating a claim of qualified immunity must first determine whether the

plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (*quoting Conn v. Gabbert*, 526 U.S. 286 (1999)).

Under *Harlow*, the determination of whether an official protected by qualified immunity may be held personally liable depends on the "objective reasonableness" of the allegedly unlawful action, assessed in light of legal rules that were "clearly established" at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635 (1987). The right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. Furthermore, as the Court in *Martin v. Malhoyt*, 830 F.3d 237, (D.C. Cir. 1987) stated:

> [P]laintiffs bringing suit against public officials generally must put forward, in their complaints or other supporting materials greater factual specificity and particularity than is usually required.

*Id*. at 256.

A released prisoner's right to transitional medications was not and is not clearly established as a matter of law. (*See* Discussion, *supra* at pages 3-4). Even assuming *arguendo* that Harrison or York made a discretionary decision to deprive Plaintiff of transitional medications upon release (and there is no allegation whatsoever to support such an inference), there should be no constitutional liability arising there from. As a matter of law, all of the cases cited by Plaintiff that require the government to administer medical treatment have done so for persons whose liberty is still constrained by the government. (*Id*.) Plaintiff was not released on parole, probation or any other type of conditional release. (*Id*.) She was free to go to seek medical care at the closest emergency room.

There is no case law, statute or regulation establishing that government officials are liable for failing to give transitional medication to ex-inmates who are freed absolutely from custody.

Thus, neither Harrison nor York violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* at 818.

Furthermore, "qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194 (2001)(citing *Mitchell*, 472 U.S. at 526)). "The relevant dispositive inquiry in determining [if an official is entitled to qualified immunity is] whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 195 (citing *Malley v. Briggs*, 457 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

As a policy matter, it is clear that administrators, such as the supervisory defendants in the instant case, would be reluctant to exercise their duties relative to the countless actions and decisions that they have to make if they had to fear that lawsuits would flow from each action, decision or recommendation made.

Plaintiff's pleadings have not overcome the presumption in favor of immunity for public officials acting in their individual capacities. *See Hidahl v. Gilpin County DSS*, 938 F.2d. 1150, 1155 (10th Cir. 1991). The claims against Harrison and York should be dismissed with prejudice on the basis of their qualified immunity from suit.

**G. The Facts Alleged in Plaintiff's Complaint Do Not Support a Finding of Subjective Deliberate Intent**

In cases arising out of prison conditions, the plaintiff must prove that the prison officials' state of mind is one of subjective "deliberate indifference" to the plaintiff's health and safety. *Farmer v. Brennan,* 511 U.S. at 834 *(quoting Wilson v. Seiter,* 501 U.S. at 302-03). The source of this requirement is "the Eighth Amendment itself, which bans only cruel and unusual

punishment."' *Wilson v. Setter,* 501 U.S. at 300. "If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.*

The "mental element" that must be proven is a stringent requirement. In cases involving prison conditions, the subjective test has been held by the Supreme Court as follows:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer,* 511 U.S. at 837.

Although the plaintiff generally alleges in her complaint that prison officials knew of her inability to obtain medications, she states no factual allegations tending to support such an inference. A blanket conclusion that does not set forth any supporting factual allegations, will not survive a motion to dismiss or for summary judgment. *Miller v. Barry*, 698 F.2d 1259 (1983).

**H. Assuming this Court Finds that Plaintiff Continued to Be Deprived of Liberty and Subject to the Eighth Amendment, Plaintiff's Claims Should Fail for Her Failure to Exhaust Her Administrative Remedies**

Plaintiff had a concomitant duty to file an administrative grievance prior to bringing this lawsuit, if she is alleging that the acts or omissions of the District Defendants occurred while she was a prisoner whose liberty was constrained. District Defendants argue to the contrary, that at all times the alleged acts or omissions of the District Defendants occurred the Plaintiff was on

release status pending processing and an administrative review of her warrants and holds in other jurisdictions.

Plaintiff seeks to rely upon a line of cases which impose Eighth Amendment liability on the government for failure to give medical care to inmates whose liberty is constrained by government action. (*See generally*, Discussion pages 3-4, supra). Plaintiff argues that "the gravamen of [her] complaint is that the Defendants had a duty under the Eighth Amendment to provide her with transitional (or bridge) medications upon her release . . ..".[8] The Eighth Amendment protects persons whose liberty has been constrained by the government, *i.e.*, prisoners. *DeShaney* at 200.

Since Plaintiff contends that she was a prisoner or otherwise constrained from freedom **by the government during the time she failed to get medications**, then Plaintiff likewise failed to exhaust her administrative remedies required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Prisoners are required to exhaust their administrative remedies. *Id.* Plaintiff has neither alleged nor shown that she has exhausted administrative remedies that were available to her under the District of Columbia's Inmate Grievance Procedure, as required by the PLRA.

The PLRA requires that no action with respect to prison conditions be brought "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The purpose of the grievance procedures is to give prison officials an opportunity to address alleged problems and to relieve the courts of unnecessary litigation. Thus, Plaintiff's claims should be dismissed for her failure to exhaust administrative remedies. *Porter v. Nussle,* 534 U.S. 516, 520 (2002)*; Jackson v. District of Columbia,* 254 F.3d 262, 269, 270-71 (D.C. Cir. 2001). She has failed to

[8] Plaintiff's Opposition at 1.

assert that she exhausted her administrative remedies as a condition precedent to bringing this lawsuit.

**I. Plaintiff's Negligence Claims, Including Negligent Training, and Supervision May Not Be Maintained**

Plaintiff opposes the District Defendants' relief by alleging that "[D]efendants have not contested the sufficiency of her allegations with respect to her negligence claims.[9] To the contrary, the District Defendants aver and reiterate that supplemental jurisdiction of this Court should not be exercised in light of the paucity of constitutional claims alleged. *Gaubert v. Gray*, 747 F. Supp. 40, 50 (D.C. Cir. 1990).

**J. The District Is Immune from Liability for the Performance or Alleged Failure to Perform Its Discretionary Functions**

Plaintiff's negligence claims are barred by sovereign immunity. Claims against the District must withstand the scrutiny associated with sovereign immunity. In this jurisdiction, the doctrine of sovereign immunity acts as a bar to bringing suit against the District of Columbia for its discretionary functions, as opposed to its ministerial duties. *Powell v. District of Columbia,* 602 A.2d 1123, 1126 (D.C.1992).

Whether a governmental function is discretionary or ministerial is a determination of law to be made by the trial judge, not the jury. *See North Wash. Neighbors, Inc.*, 367 A.2d 143, 148 n. 7 (D.C. 1976). "'Where there is room for policy judgment and decision, there is discretion.'" *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 36 (1953)). The omissions that Plaintiff attributes to the District Defendants, *i.e.*, an alleged decision not to provide her with transitional medications, are discretionary functions of the government. The District uses its discretion to as to how to expend its funds or resources. It can decide not to follow its own policies. These discretional decisions are best left to those elected to serve or hired to perform these acts based

[9] Plaintiff's Opposition at 2.

on their expertise. This Court should not entertain the claims of Plaintiff that seek to override the discretion rightfully placed in the hands of the District and to compel distribution of medications to all inmates.

## III. CONCLUSION

The District of Columbia ("the District") is not legally responsible for the continued medical care of prisoners after they are released from correctional facilities to the community. The District's legal responsibility for the prisoner's medical conditions stops at the jailhouse door, as a matter of law.

Provision of transitional medications is not a constitutional right of each and every inmate upon release. Instead, that decision must be left to the sound discretion of the policy-makers of the District of Columbia who are charged with management and administration of the public fisc.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Ellen A. Efros
ELLEN A. EFROS
Chief, Equity I

/s/ Denise J. Baker
DENISE J. BAKER
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S079
Washington, D.C. 20001
(202) 442-9887 (telephone)
(202) 727-3625 (fax)

Alerts: SPECIAL HANDLING

SCROLL FOR MORE >>>

No Photo Available

| Name | Section | Block | Cell | Bed | Location |
|---|---|---|---|---|---|
| RANKIN, TROY | | | | | 12 |

| Birth | Sex | Race | Release | Admt Type | SS# | Booking# | DCDC# | Booked Date | Classification |
|---|---|---|---|---|---|---|---|---|---|
| 06/17/1966 | M | B | 04/03/1998 | | 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 | 27688900 | 276889 | 03/26/1998 | |

Booking | Account | Alias | Billing Agr | Bond | Btch Prpr | Charges | Classify | Clothing | Cmmsry | Commissa | Ctgry Lmt | Detainers | Drugs | Education | Employme | Grievance | Housing | ID#'s | Incidents | Mail Log | Medical

Charge Info | Hearing Info | Arrest Info | Bond Info | Sentence Info

**Offense Information**

| Field | Value |
|---|---|
| Case/Docket Number | M1691797A |
| Offender Tracking Number | |
| Offense Code | DOC-1631 |
| Days in on this Offense | 935 |
| Offense Description | DOC-SOLICITING PROSTITUTIONS. |
| Grade | |
| Degree | |
| Count | |
| Weight | |
| Offense Flags | |
| Offense Identifier | Sentenced |
| Reason for Release | |
| Date of Offense | 00/00/0000 |
| Date/Time Booked on Offense | 03/26/1998 00:00 |
| NCIC Code | |
| Discharge Date | 00/00/0000 |
| Booking Authority on this Offense | SUPERIOR COURT |
| Conviction Date | 00/00/0000 |
| Offense Disposition | TIME SERVED OR SUSPENDED |
| Jurisdiction Code | 1 |
| Disposition Date | 00/00/0000 |
| Youthful Offender | |
| Judge | |
| Magistrate Docket | |

**Parole Information**

| Field | Value |
|---|---|
| Parole Violator | |
| Automatic Parole | |
| State or County | |
| Probation Violator | |
| Parole/Probation Officer | |
| Charge Enhancements | |

**Original Offense Information**

| Field | Value |
|---|---|
| Original Offense Code | |
| Original Offense Grade | |

**DNA Information**

| Field | Value |
|---|---|
| DNA Test Required | |

Print Screen... | nt | Search | Hearing | History | Copy | Lookup Chrge | OTN Search | Abort

...te: RANKIN, TROY

Booking #: 2005-10300 Permanent ID: 276889

**Offense Information**

Case/Docket Number: M0601405A
Offender Tracking Number:
Offense Code: SUP-2050
Days in on this Offense:
Offense Description: SEXUAL SOLICITATION
Grade: Misdemeanor
Degree:
Count:
Weight:
Offense Flags:
Offense Identifier: Sentenced
Date of Offense: 07/27/2005
Reason for Release:
Discharge Date: 12/02/2005
Date/Time Booked on Offense: 07/27/2005 16:27
NCIC Code:
Conviction Date: 00/00/0000
Booking Authority on this Offense: SUPERIOR COURT
Jurisdiction Code: SENTENCED MIS
Offense Disposition: SENTENCING REFORM AMENDMENT A(
Youthful Offender: ☐
Disposition Date: 07/27/2005
Judge: JOHNSON, J. RAMSEY
Magistrate Docket:

**Parole Information**

Parole Violator: No
Automatic Parole:
State or County:
Probation Violator: No
Parole / Probation Officer:
Charge Enhancements:

**Original Offense Information**

Original Offense Code:
Original Offense Grade:

**DNA Information**

DNA Test Required:

**Offense Notes Information**

SENTENCED 07/27/05 TO THIRTY(30) DAYS IN JAIL.

Inmate: RANKIN, TROY

Booking #: 2004-04972 Permanent ID: 276889

**Offense Information**

| Field | Value | Field | Value |
|---|---|---|---|
| Case/Docket Number | M0028104A | Offender Tracking Number | |
| Offense Code | SUP-U050 | Days in on this Offense | |
| Offense Description | SEXUAL SOLICITATION | | |
| Grade | Misdemeanor | Degree | |
| Count | | Weight | |
| Offense Flags | | Offense Identifier | Released |
| Date of Offense | 04/14/2004 | Reason for Release | |
| Discharge Date | 07/01/2004 | Date/Time Booked on Offense | 04/14/2004 14:44 |
| | | NCIC Code | |
| Conviction Date | 00/00/0000 | Booking Authority on this Offense | SUPERIOR COURT |
| Jurisdiction Code | SENTENCED MIS | Offense Disposition | CHARGE EXPIRED |
| Youthful Offender | | Disposition Date | 00/00/0000 |
| Judge | CHRISTIAN, KAYE K. | Magistrate Docket | |

**Parole Information**

| Field | Value | Field | Value |
|---|---|---|---|
| Parole Violator | No | Automatic Parole | |
| State or County | | Probation Violator | No |
| Parole / Probation Officer | | Charge Enhancements | |

**Original Offense Information**

| Field | Value |
|---|---|
| Original Offense Code | |
| Original Offense Grade | |

**DNA Information**

| Field | Value |
|---|---|
| DNA Test Required | |

**Offense Notes Information**

SENTENCED 04/14/04 TO 180 DAYS IN JAIL, ESS TO ALL BUT EIGHTY(80) DAYS IN JAIL.

...e: RANKIN, TROY

Booking #: 2005-10300 Permanent ID: 276889

**Offense Information**

Case/Docket Number: M0028104A
Offender Tracking Number:
Offense Code: SUP-2050
Days in on this Offense: 1
Offense Description: SEXUAL SOLICITATION
Grade: Misdemeanor
Degree:
Count:
Weight:
Offense Flags:
Offense Identifier: Sentenced
Reason for Release: SENTENCED MISDEMEANOR
Date of Offense: 08/15/2005
Discharge Date: 12/02/2005
Date/Time Booked on Offense: 08/15/2005 00:00
NCIC Code:
Conviction Date: 00/00/0000
Booking Authority on this Offense: SUPERIOR COURT
Jurisdiction Code: SENTENCED MIS
Offense Disposition: SENTENCED AND SERVING
Youthful Offender:
Disposition Date: 08/15/2005
Judge: CHRISTIAN, ERIK
Magistrate Docket:

**Parole Information**

Parole Violator: No
Automatic Parole:
State or County:
Probation Violator: Yes
Parole / Probation Officer:
Charge Enhancements:

**Original Offense Information**

Original Offense Code:
Original Offense Grade:

**DNA Information**

DNA Test Required:

**Offense Notes Information**

AS TO COUNT 'A' - (180) ONE HUNDRED AND EIGHTY DAYS IN JAIL WITH CREDIT FOR TIME SERVED.

Assignment Sheet

## Inmate Record

## 276889 - RANKIN, TROY



| | |
|---|---|
| **Institution:** | 12 - CENTRAL DETENTION FACILITY (CDF) |
| **Current Location:** | RELEASED |
| **Record Status:** | INACTIVE |
| **Booking Number:** | 2005-10300 |
| **PDID Number:** | 423381 |
| **Social Security #:** | 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 |
| **US Marshal #:** | N/A |
| **# Total Bookings:** | 3 Booking History |
| **Commitment Date:** | 07/27/2005 |
| **Release Date:** | 12/02/2005 |
| **Release Type:** | EXPIRATION |
| **In Custody Of:** | SELF |
| **Parole Elig. Date:** | 12/02/2005 |
| **Short Term Date:** | 12/02/2005 |
| **Full Term Date:** | 12/02/2005 |

## Personal Data

| | | | |
|---|---|---|---|
| **Sex:** | MALE | **Race:** | BLACK |
| **Birth Date:** | 06/17/1968 | **Ethnicity:** | AFRICAN AMERICAN |
| **Birth Place:** | MD | **Education:** | 12 |
| | | **Occupation:** | UNEMPLOYED/UNKNOWN |
| **Hair:** | BLACK | **Address:** | 1748 DUTCH VILLAGE DR. LANDOVER, MD 20785 |
| **Eyes:** | BROWN | | |
| **Weight:** | 163 | | |
| **Height:** | 5' 7" | | |
| **Aliases:** | (No Alias SSN's) | | (No Alias Names) |

## Charges

**Charge: SUP-2050 - SEXUAL SOLICITATION**

| | | | |
|---|---|---|---|
| **Case#:** | M0601405A | **Min Sentence:** | 0 yrs 0 mths 30 days |
| **Court:** | SUPERIOR COURT | **Max Sentence:** | 0 yrs 0 mths 30 days |
| **Offense Date:** | 07/27/2005 | **Date Sentenced:** | 07/27/2005 |
| **Date Charged:** | 07/27/2005 | **VVCC:** | $ N/A |
| **Count:** | N/A | **Bond Amount:** | $ N/A |
| **Disposition:** | SRAA - SENTENCING REFORM AMENDMENT ACT | **Bond Type:** | N/A |

**Charge: SUP-2050 - SEXUAL SOLICITATION**

| | | | |
|---|---|---|---|
| **Case#:** | M0028104A | **Min Sentence:** | 0 yrs 0 mths 180 days |
| **Court:** | SUPERIOR COURT | **Max Sentence:** | 0 yrs 0 mths 180 days |
| **Offense Date:** | 08/15/2005 | **Date Sentenced:** | 08/15/2005 |
| **Date Charged:** | 08/15/2005 | **VVCC:** | $ N/A |
| **Count:** | N/A | **Bond Amount:** | $ N/A |
| **Disposition:** | 1 - SENTENCED AND SERVING | **Bond Type:** | N/A |

Assignment Sheet

## Detainers

(No Detainer History)

## Transfer History

| | Date/Time | Institution |
|---|---|---|
| From: | 7/27/2005 4:27:07 PM | INITIAL |
| To: | 7/27/2005 4:27:07 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| From: | 8/9/2005 6:10:29 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| To: | 8/9/2005 6:41:01 PM | 11 - CORRECTIONAL TREATMENT FACILITY |
| From: | 9/2/2005 11:08:31 PM | 11 - CORRECTIONAL TREATMENT FACILITY |
| To: | 9/2/2005 11:08:53 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| From: | 9/16/2005 8:52:50 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| To: | 9/17/2005 7:07:32 AM | 11 - CORRECTIONAL TREATMENT FACILITY |
| From: | 9/24/2005 7:44:45 PM | 11 - CORRECTIONAL TREATMENT FACILITY |
| To: | 9/24/2005 7:46:14 PM | 11 - CORRECTIONAL TREATMENT FACILITY |
| From: | 9/24/2005 7:47:23 PM | 11 - CORRECTIONAL TREATMENT FACILITY |
| To: | 9/24/2005 7:47:37 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| From: | 10/11/2005 4:50:21 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| To: | 10/12/2005 5:07:59 AM | 11 - CORRECTIONAL TREATMENT FACILITY |
| From: | 12/2/2005 5:27:57 AM | 11 - CORRECTIONAL TREATMENT FACILITY |
| To: | 12/2/2005 5:30:03 AM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| From: | 12/2/2005 9:15:07 PM | 12 - CENTRAL DETENTION FACILITY (CDF) |
| To: | 12/2/2005 9:15:07 PM | RELEASE |

## Booking History

| Booking# | Committment Date | Release Date | |
|---|---|---|---|
| 2005-10300 | 07/27/2005 | 12/02/2005 | <<<---Displayed Above |
| 2004-04972 | 04/14/2004 | 07/01/2004 | |
| 27688900 | 03/26/1998 | 04/03/1998 | |

*The Washington, DC Department of Corrections updates this information regularly. Therefore, information on this site may not reflect the current location, status, release date or other information regarding an inmate.*

*For additional information, please contact the DC Department of Corrections*

**DISTRICT OF COLUMBIA**
**D.C. DEPARTMENT OF CORRECTIONS**

CERTIFICATION OF AUTHENTICITY

I, **Aden Bushee**, do hereby certify that I am the custodian of institutional records at the D.C. Department of Corrections Central Detention Facility. Pursuant to a request for records issued in the matter of Troy Rankin DCDC 276889, I have retrieved the requested records. These records are from the official files and records maintained at the Department of Corrections, in the normal course of business, for inmates in the custody of the Department of Corrections.

3/23/07
Date

Aden Bushee

**DISTRICT OF COLUMBIA**
**D.C. DEPARTMENT OF CORRECTIONS**

CERTIFICATION OF AUTHENTICITY

I, **Patsy Olds**, do hereby certify that I am the custodian of institutional medical records at the D.C. Department of Corrections Central Detention Facility. Pursuant to a request for records issued in the matter of Troy Rankin DCDC 276889, I have retrieved the requested records. These records are from the official files and records maintained at the Department of Corrections, in the normal course of business, for inmates in the custody of the Department of Corrections.

03/23/07
Date

[signature]
Patsy Olds

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY (aka TREYSHAWN) RANKIN

Plaintiffs,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Civil Action No. 06-02063

DECLARATION OF DENNIS HARRISON, SR.

I, Dennis Harrison, Sr., declare and state as follows:

1. I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2. I served as the Warden of the D.C. Jail during the period that the plaintiff was incarcerated.

3. I never had contact with Plaintiff, Troy Rankin, while she was incarcerated. I have no specific familiarity with this particular inmate, and did not specifically give orders with respect to her incarceration or medical care.

4. I had no specific knowledge of her medical history, medical care requirements, or medical care regime while she was incarcerated. I did not know that she was or was not HIV-positive during her incarceration or that she was disabled in any way until I received a copy of the complaint.

5. I was not present when she was released from incarceration, I did not order her release, and I was not involved in the release process.

6. I do not have nor have I ever had any personal animus or subjective intent to harm Ms. Rankin.

7. I know of no written or informal policies, customs or practices of DOC that would preclude medical care or prescription medications to Ms. Rankin. I know that there was an agreement between DOC and its medical care provider, which contains provisions for specific medical care, treatment, and medications. I know of no District of Columbia or federal statutory requirement that would have put me on notice of a substantial risk of harm to plaintiff, if she did not receive medication upon her release from jail.

8. DOC contracted with Center for Correctional Health and Policy Studies, Inc. (CCHPS) to provide medical services to inmates, who were incarcerated at the Correctional Detention Facility, a DOC-owned and operated facility and at the Correctional Treatment Facility (CTF), an independent correctional facility owned and operated by a corporation under contract with DOC, Correction Corporation of America, Inc. (CCA).

9. Some of the medical services that CCHPS agreed to perform under the agreement included the issuance of bridge or transitional medications upon the inmates release or transfer. Inmates were to receive a seven (7) day supply of medications when they were released to the community under an agreement between DOC and CCHPS.

10 As agreed by DOC and CCHPS, all prescriptions were to be prescribed by the responsible physician, dispensed by a licensed pharmacist, and delivered to the inmate by a licensed nurse or pharmacy technician.

11. CCHPS was required to provide medical treatment and prescription services 24 hours per day, seven days per week. Correctional officers did not dispense medications to inmates at any time.

12. To the best of my knowledge, information, and belief, the purpose of the agreement between CCHPS and DOC was to assure adequate medical treatment and medication to inmates. I had no reason to infer that adequate medical treatment or medications would not be dispensed by the medical professional(s) involved in the treatment and care of any inmate, including Ms. Rankin. I can only infer that the reason that Ms. Rankin did not receive her medication is because the message was not properly relayed to the correctional officer or CCHPS did not reconcile its prescriptions with a check for discharged inmates that date.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dennis Harrison, Sr.

3-21-07
Date

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TROY (aka TREYSHAWN) RANKIN )
)
Plaintiffs, )
v. ) Civil Action No. 06-2063
)
DISTRICT OF COLUMBIA, *et al.*, )
)
Defendants. )

DECLARATION OF S. ELWOOD YORK

I, S. Elwood York, declare and state as follows:

1. I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2. I served as the Interim Director of the Department of Corrections (DOC) from February, 2005 to January, 2006. Prior to serving as the DOC Interim Director, I was the DOC General Counsel from 1997-1999, and Acting Director of the Bureau of Corrections, U.S.V.I. from 1995-1996. I served as the Principal Assistant Attorney General, U.S.V.I from 1993-1996. From 1989-1993, I was a Judge of the Municipal Court for the City of Houston, Texas.

3. I never had contact with Plaintiff, Troy Rankin, while she was incarcerated. I have no specific familiarity with this particular inmate, and did not specifically give orders with respect to her incarceration or medical care.

4. I had no specific knowledge of her medical history, medical care requirements, or medical care regime while she was incarcerated. I did not know that she was or was not

HIV-positive during her incarceration or that she was disabled in any way until I received a copy of the complaint.

5. I was not present when she was released from incarceration, I did not order her release, and I was not involved in the release process.

6. I do not have nor have I ever had any personal animus or subjective intent to harm Ms. Rankin.

7. I know of no written or informal policies, customs or practices of DOC that would preclude medical care or prescription medications to Ms. Rankin. I know that there was and is an agreement between DOC and its medical care provider, which contains provisions for specific medical care, treatment, and medications. I know of no statutory requirement that would have put me on notice of a substantial risk of harm to plaintiff.

8. DOC contracted with Center for Correctional Health and Policy Studies, Inc. (CCHPS) to provide medical services to inmates, who were incarcerated at the Correctional Detention Facility, a DOC-owned and operated facility and at the Correctional Treatment Facility (CTF), an independent correctional facility owned and operated by a corporation under contract with DOC, Correction Corporation of America, Inc. (CCA).

9. Some of the medical services that CCHPS agreed to perform under the agreement included the issuance of bridge or transitional medications upon the inmates release or transfer. The source of this requirement was the contract agreement between DOC and CCHPS. Inmates were to receive a seven (7) day supply of medications when they were released to the community.

10. As agreed by DOC and CCHPS, all prescriptions were to be prescribed by the responsible physician, dispensed by a licensed pharmacist, and delivered to the inmate by a licensed nurse or pharmacy technician.

11. I did not directly supervise correctional officers with respect to dispensing medications to prisoners upon their release from jail. I have no actual knowledge of HIV-positive or AIDS-related illness inmates receiving disparate treatment while incarcerated by DOC.

12. CCHPS was required to provide medical treatment and prescription services 24 hours per day, seven days per week.

13. The CCHPS had access to the computer-generated inmate release data.

14. CCHPS was to utilize at least triple drug therapies for HIV/AIDS patients under the contract, and DOC was to be responsible for the costs of all prescriptions under the agreement between DOC and CCHPS.

15. To the best of my knowledge, information, and belief, the purpose of the agreement between CCHPS and DOC was to assure adequate medical treatment and medication to inmates. I had no reason to infer that adequate medical treatment or medications would not be dispensed by the medical professional(s) involved in the treatment and care of any inmate, including Ms. Rankin. I can only infer that the reason that Ms. Rankin did not receive her medication is because of a mistake.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

S. Elwood York

3/21/07
Date